CREWS v GENERAL MOTORS CORPORATION

Docket No. 56853. Argued October 6, 1976 (Calendar No. 15).—Decided June 2, 1977. Rehearing denied, *post* 1029.

Glen Crews and Barbara Crews brought a product liability action against General Motors Corporation for damages arising from a fire in a V-12 engine of a tractor truck which had been purchased by Glen Crews' employer, Groesbeck Lumber Company. In attempting to repair it, he cranked the engine by using the ignition switch without disconnecting the primary ignition wires; a flame from the engine ignited gasoline fumes in the cab of the truck, and he was badly burned. One count of the complaint alleged a breach of implied and express warranties, and the other alleged that General Motors was negligent in failing to examine and test the engine and in failing to make adequate repairs. The Wayne Circuit Court, Elza H. Papp, J., directed a verdict for the defendant. The Court of Appeals, McGregor, P. J., and J. H. Gillis and Quinn, JJ., affirmed per curiam (Docket No. 16664). Plaintiffs appeal. *Held:*

The judgment of the Court of Appeals is affirmed by an equally divided Court.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 902.

[2, 5, 11, 13] 63 Am Jur 2d, Products Liability §§ 50, 51.

Manufacturer's or seller's duty to give warning regarding product as affecting his liability for product-caused injury. 76 ALR2d 9.

[3, 8, 11–13] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 647, 649, 651, 661, 662.

Liability of manufacturer or seller for injury caused by automobile or other vehicle, aircraft, boat, or their parts, supplies or equipment. 78 ALR2d 460.

[4, 8] 63 Am Jur 2d, Products Liability §§ 128, 129.

[6, 13] 75 Am Jur 2d, Trial § 664.

[7, 8] 75 Am Jur 2d, Trial §§ 469, 483, 496–500, 534, 537.

[9–13] 57 Am Jur 2d, Negligence § 47 *et seq.,* 57, 58.

Manufacturers' duty to test or inspect as affecting his liability for product-caused injury. 6 ALR3d 91.

[14] 8 Am Jur 2d, Automobiles and Highway Traffic § 955.

Admissibility of evidence of repairs, change of conditions, or precautions taken after accident. 64 ALR2d 1296.

Justice Coleman, Justices Fitzgerald and Ryan concurring, would affirm for these reasons:

1. Plaintiff's case does not rest upon the "failure to warn" theory that the defendant's truck maintenance manual had a warning about disconnecting the ignition primary wire on a V-6 engine but no similar warning for a V-12 engine. Further, the facts do not support the theory. Crews was an experienced automotive mechanic, and he testified that he did not need a manual to tell him to disconnect the ignition wires before cranking the engine by using the ignition switch.

2. Breach of warranty and negligence are inapplicable to these facts. The manufacturer is best able to control dangers arising from defects of manufacture, but the plaintiff must prove a defect attributable to the manufacturer and a causal connection between that defect and the injury or damage of which he complains.

3. There was no showing that a defect in the engine caused the fire. Plaintiffs claimed that the engine's hydraulic valve lifter system was defective. They did not, however, introduce evidence which tended to prove, either directly or by permissible inference, that there was a defect in the engine when it left the manufacturer and that the defect was the proximate cause of the plaintiffs' damage.

4. Manufacturers are not required to design their products so as to warrant freedom from injury or damage when the dangers of improper use of the products are well known to all users. Crews was not deterred by his knowledge of the danger.

Justice Williams, the Chief Justice and Justice Levin concurring, would reverse for these reasons:

1. In reviewing a directed verdict all evidence must be viewed in the light most favorable to the party against whom the verdict was directed. To avoid a directed verdict for the defendant, a plaintiff must make out a prima facie case of negligence which includes proof that (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached or violated the duty, (3) the breach was a proximate cause of the damages, and (4) that the plaintiff suffered damages. Sufficient evidence was presented in the plaintiffs' case in chief to take this case to the jury on a theory of negligence.

2. Evidence was presented that General Motors had warranted the truck and had a contractual duty to repair it at the time of plaintiff's injury. A duty of care underlying an action in tort may arise out of a contractual relationship. However, a tort action will not lie when based *solely* on nonperformance of

a contractual duty. A duty of care arising out of a contractual relationship is owed to those foreseeably injured by the negligent nonperformance in a way over and above the withholding of the benefit contracted for, without regard to any question of reliance by the plaintiff in the specific case.

3. The instant case is not based merely on the alleged failure of General Motors to perform its contractual duty to repair, but on a refusal to repair where a situation of peril had been created by General Motors through affirmative conduct and where it was foreseeable that the failure to repair would expose a person in plaintiff's position to the danger created through General Motors' affirmative conduct. The evidence supports the conclusion that General Motors had in fact created a situation of peril because its maintenance manual failed to instruct the reader that the primary ignition wires should be disconnected on a V-12 engine before making repairs that involved cranking the engine. The evidence further indicates that General Motors did not merely refuse to repair the engine but directed plaintiff's employer to repair it. Given all these facts, there can be little doubt that General Motors was under a duty to plaintiff which can serve as a basis for plaintiff's negligence theory in this suit.

4. It was clearly foreseeable that a person in plaintiff's position would be exposed to the dangers inherent in the situation created by General Motors. The cornerstone of the concept of proximate cause is foreseeability. Certainly, a jury might conclude that subsequent to the refusal to repair, a mechanic employed by the owner would attempt to repair the truck and rely on the defendant's service manual.

5. The conflicting evidence as to whether the defendant's failure to warn was the reason that the plaintiff did not disconnect the ignition wires presented a fact question which must be decided by a jury. A jury might reasonably conclude that the failure to repair, in the context of the deficient warning in the maintenance manual, and the directive of the defendant's representative to plaintiff's employer to repair the engine, constituted a proximate cause of plaintiff's injury.

6. Exclusion of evidence of repair of the engine after the fire was permissible under the rule against admission of evidence of subsequent repair to show negligence.

Justice Blair Moody, Jr., did not participate.

### DECISION OF THE COURT

1. PRODUCTS LIABILITY—NEGLIGENCE—DIRECTED VERDICT—EQUALLY DIVIDED COURT.

   A judgment of the Court of Appeals which affirmed a directed verdict for a defendant manufacturer of a truck which allegedly injured a plaintiff who was repairing it for the owner, his employer, and did not disconnect the ignition wires while working on the fuel line is affirmed by an equally divided Court.

### FOR AFFIRMANCE

#### COLEMAN, FITZGERALD, and RYAN, JJ.

2. PRODUCTS LIABILITY—DANGEROUS PRODUCT—WARNING.

   *The "failure to warn" theory of liability is not substantiated by the facts of a product liability case where the plaintiff, an experienced automotive mechanic, testified that he knew that the ignition wires of gasoline engines should be disconnected when working on the fuel line, but that he did not do it and was severely burned.*

3. PRODUCTS LIABILITY—DEFECT—IMPLIED WARRANTY.

   *The essence of the developing weight of products liability authority is that a manufacturer is best able to control dangers arising from defects of manufacture; however, this is not liability without fault, because a plaintiff in a product liability action alleging an implied warranty must prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains.*

4. PRODUCTS LIABILITY—DEFECT—IMPLIED WARRANTY—BURDEN OF PROOF.

   *The burden is upon the plaintiff in a product liability action to prove, not upon the defendant to disprove, the existence of a defect in the product and its causal connection with the injury or damage suffered.*

5. PRODUCTS LIABILITY—DANGEROUS PRODUCT—WARRANTY.

   *Manufacturers are not required to design their products so as to warrant freedom from injury or damage when the dangers of improper use of such products are well known to all users.*

### FOR REVERSAL

#### KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ.

6. TRIAL—DIRECTED VERDICT—QUESTION OF FACT.

   *The jury, not the trial judge, is the trier of fact, and whenever*

there is a question of fact upon which reasonable persons may differ, the trial judge may not direct a verdict.

7. TRIAL—MOTIONS—DIRECTED VERDICT—EVIDENCE—PRIMA FACIE CASE.

A trial court in considering a motion for a directed verdict must accord to the nonmoving party the benefit of viewing the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party; if the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict must be denied.

8. NEGLIGENCE—PRIMA FACIE CASE—ELEMENTS.

A plaintiff, in order to avoid a directed verdict for the defendant in a negligence action, must make out a prima facie case which includes proofs that (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached or violated the duty, (3) the breach of duty was a proximate cause of the damages plaintiff suffered, and (4) the plaintiff suffered damages.

9. NEGLIGENCE—DUTY OF CARE—CONTRACTUAL RELATIONSHIP.

A legal duty of care underlying an action in tort may arise out of a contractual relationship; however, a tort action will not lie when based solely on nonperformance of a contractual duty.

10. NEGLIGENCE—DUTY OF CARE—CONTRACTUAL RELATIONSHIP.

The determination of the existence of a duty which will support a tort action must look to all the relevant facts of the case; a duty of care arising out of a contractual relationship is owed to those foreseeably injured by the negligent nonperformance in a way over and above the withholding of the benefit contracted for, without regard to any question of reliance by the plaintiff in the specific case.

11. NEGLIGENCE—PRODUCTS LIABILITY—DUTY OF CARE—CONTRACTUAL RELATIONSHIP.

A manufacturer of a truck was under a duty to a plaintiff who was injured while repairing the truck which can serve as a basis for plaintiff's negligence theory in a suit for damages where the manufacturer's refusal to perform its contractual obligation to repair the truck arose in a context in which a situation of peril had been created by the manufacturer by failing to warn of the need to disconnect the ignition wires before cranking the engine and by directing the plaintiff's employer to repair the engine, and in which it was foreseeable that the failure to repair would expose a person in the plaintiff's position to the danger created.

12. NEGLIGENCE—PROXIMATE CAUSE—FORESEEABILITY.

*The cornerstone of the concept of proximate cause is foreseeability; a jury might conclude that it was foreseeable that, subsequent to a manufacturer's refusal to repair a truck under a warranty, an employee of the truck owner would attempt to repair the truck and rely on the manufacturer's maintenance manual, especially where the manufacturer's representative directed the owner to repair the truck.*

13. NEGLIGENCE—PRODUCTS LIABILITY—QUESTION OF FACT.

*A plaintiff who was injured while repairing his employer's truck presented sufficient evidence of negligence by the truck's manufacturer, which had refused to repair the truck although it was under a warranty and had directed plaintiff's employer to repair it, to present a factual question which must be decided by a jury where there was conflicting testimony as to whether a failure of the manufacturer to warn of the need to disconnect the ignition wires before cranking the engine was the reason that the plaintiff did not disconnect the wires, and where the plaintiff was injured when a flame came from the engine when he cranked it and set off an explosion and fire.*

14. NEGLIGENCE—EVIDENCE—ADMISSIBILITY—SUBSEQUENT REPAIR.

*Evidence of subsequent repair is not admissible to show negligence causing the injury.*

*Ripple & Chambers, P. C.,* for plaintiffs.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *W. P. Cooney* and *John P. Jacobs; Frazer F. Hilder* and *Thomas W. Watkins,* General Counsel, of counsel) for defendant.

COLEMAN, J. *(to affirm).* Glen and Barbara Crews filed suit against General Motors Corporation (GM) on November 6, 1967 in Wayne County circuit court.

Count I of the complaint said GM breached an "implied warranty that the engine was fit for the purpose intended * * * the express warranty that said engine would operate properly and safely and was safe to operate and maintain * * * [and] express warranties by agents or employees * * *

that said engine was not defective and would operate properly and was safe to operate and maintain". Count II accused GM of negligence in failing to examine and test the engine and in failing to make adequate repairs.

GM countered that it would show that "plaintiff misused the product and was guilty of contributory negligence in attempting to repair the engine without following accepted repair procedures and in starting the engine with the head off".

At the close of plaintiffs' proofs, the trial court granted defendant's motion for directed verdict. The Court of Appeals affirmed being convinced that "even if the evidence sufficed to show a defect in the engine, there was absolutely no showing that this defect caused the fire".

We would affirm the Court of Appeals.

I

Mr. Crews was employed by Groesbeck Lumber Co. as a truck mechanic. He "was supposed to do the motor tune-up, change the oil, do all the greasing and maintenance of the truck". Crews had been employed as a mechanic by several other businesses. He considered himself a qualified automobile mechanic and said he was "hired in [at Groesbeck] to keep the trucks going, it was my job".

A GM truck owned by Groesbeck had a V-12 engine which plaintiff's brief admits "consists essentially of two 6-cylinder engines, front and rear, with a common crank shaft". The truck lost power while pulling a full load. GM had serviced it on several occasions.

When the problem persisted, Mr. Crews tried to

fix it.[1] On November 24, 1964, he removed the floor boards which covered part of the engine. He checked the fuel pressure and then removed a manifold. He was sitting in the cab with one foot on the engine when he "turned the key on and an explosion * * * came out number 7 intake port". This started a fire. Mr. Crews dropped the fuel lines he was holding and the gasoline also ignited. Mr. Crews was badly burned.

When plaintiffs' proofs were presented, GM received a directed verdict. The transcript containing the judge's ruling is garbled. The Court of Appeals reviewed the testimony and was convinced that "even if the evidence sufficed to show a defect in the engine, there was absolutely no showing that this defect [an allegedly defective valve] caused the fire".

The fire was caused by Mr. Crews turning the ignition key under what he knew to be unsafe conditions. Because certain wires were not disconnected, a spark was produced which ignited the gasoline. General Motors should not be liable for the resulting injuries.

On cross-examination, Mr. Crews admitted that the "entire commission *[sic]*, the engine, the design or shape are mainly the same" as between gasoline engines no matter how many cylinders they have—4, 6, 8, 12. He knew the engine might start if the ignition key were turned. He knew how to avoid this by disconnecting the ignition from the wires in the coil before cranking the engine.

Mr. Crews believed the fire was caused by sparks

---

[1] Plaintiff says a GM representative said, "We can't fix it, you fix it."

Art Smith, Groesbeck's manager, testified that GM had never refused to repair the truck. He agreed that "if Mr. Crews wanted to send the truck back to General Motors for work done on it, he had been given the authority to do so".

produced by turning the ignition key. There would have been no spark if the wires were disconnected:

"*Q*. And they will tell on the front page of the ignition system, that is the thing to do, don't they?

"*A*. That says V-6, am I right?

"*Q*. Did you have some notion that V-12, which was made up of two six-cylinders wouldn't spark and wouldn't ignite the gas?

"*A*. Certainly.

\*   \*   \*

"*Q*. How about a four-cylinder engine if you crank that and you don't disconnect the ignition, the ignition wires, you can get a spark can't you?

"*A*. Right.

"*Q*. And it can ignite because of that?

"*A*. Right.

"*Q*. On a six the same thing and on a eight the same thing, right?

"*A*. Right.

"*Q*. And on a 12 the same thing?

"*A*. It doesn't say in the book.

"*Q*. I didn't say it said 12, but you know that without being told in the book?

"*A*. A 12 sir—

"*Q*. Did you know that without the book, Mr. Crews, without the book telling you?

"*A*. Yes, sir.

"*Q*. So you want to be sure to disconnect it right?

"*A*. Right."

Mr. Crews was an experienced automotive mechanic, familiar with trucks. He was hired to service and maintain the trucks of Groesbeck Lumber Co., including two with V-12 engines (two V-6 engines). He knew that the ignition wires of gasoline engines should be disconnected under the circumstances. Mr. Crews said he did not need a manual to tell him the wires should be discon-

nected. He was working with a fuel line. Fumes were escaping. It would not take even such an expert mechanic to know that sparks could result in fire. Mr. Crews knew what he should have done, but did not do it.

Perhaps for these reasons he did not even plead failure to warn.

## II

In their brief, plaintiffs say the case was tried

"on the theories of breach of express and implied warranties of merchantability and fitness for particular purpose, breach of express warranty of repair, and negligence in repair. * * * Plaintiffs also tried their case on the theory that GM's breach of its express warranty to repair proximately caused the injuries to Crews and GM is liable for such injuries, whether there was a defect in the engine or not."

This was the case GM defended.

Breach of warranty and negligence are inapplicable to these facts. In *Piercefield v Remington Arms Co, Inc,* 375 Mich 85, 97–99; 133 NW2d 129 (1965), plaintiff was injured when his brother's shotgun exploded. The trial court said there was no implied warranty because there was no privity of contract. In reversing, the Court said the "essence of [the developing weight of authority] is that the manufacturer is best able to control dangers arising from defects of manufacture". This is not "liability without fault", the Court said. Plaintiff "must prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains". Also see, *Heckel v American Coupling Corp,* 384 Mich 19; 179 NW2d 381 (1970).

In *Caldwell v Fox,* 394 Mich 401, 406, 410; 231 NW2d 46 (1975), the original defendants filed "a common 'garden variety' products liability lawsuit" against two third-party defendants. The claims involved negligence and breach of warranty. The Court cited *Piercefield* and applied it to negligence claims. The original defendants "had an initial burden to (1) produce evidence of a defect which caused the accident and (2) trace that defect into the hands of the third-party defendants". Also see *Kupkowski v Avis Ford, Inc,* 395 Mich 155, 163; 235 NW2d 324 (1975): "The burden is upon the plaintiff to prove, not the defendant to disprove, the existence of a defective brake system and its causal connection with the injury or damage suffered".

The Court of Appeals was correct in saying "there was absolutely no showing that [a defect in the engine] caused the fire". Plaintiffs claimed the engine's hydraulic valve lifter system was defective. They did not "[introduce] evidence which tended to prove either directly or by way of permissible inference, that there was a defect [in the engine] when it left the manufacturer and that the defect was the proximate cause of plaintiffs' damage". *Meli v General Motors Corp,* 37 Mich App 514, 518; 195 NW2d 85 (1972). Compare the Court's reversal of a summary judgment in *McLaughlin v Consumers Power Co,* 52 Mich App 663; 218 NW2d 122 (1974).

A defect was alleged. If there was one, it did not cause the fire which injured Mr. Crews. Under existing law and rules of fairness, we cannot attribute to GM the acts of Mr. Crews which resulted in his truly regrettable injuries. The company should not be liable under any theory advanced by plaintiffs.

## III

Further reason for affirming the Court of Appeals is found in *Parsonson v Construction Equipment Co,* 386 Mich 61, 74–76; 191 NW2d 465 (1971). The plaintiff was burned when he removed a gas tank cap from an engine powering an asphalt manufacturing machine. Pressure had built up in the tank. Removing the cap released gasoline and vapors which ignited.

The jury said plaintiff had no cause of action, a decision which the Court found "defendants would have been entitled to" even "had the jury *not* found in their favor":

"Every adult person having a reasonable measure of intelligence, such as each of the Parsonson brothers exhibited while on the stand, knows better than to open a partly-filled gasoline tank for checking or filling when there is some or any nearby source of ignition. Assuredly is this true when the opening is within inches of an already heated and continuously-running gasoline engine."

Manufacturers are not required to "design their products as to warrant freedom from injury or damage * * * when the dangers of improper use of such products are known well to all users thereof". Mr. Crews was a qualified mechanic. He knew that unless certain steps were taken, his turning of the key would produce a spark which might cause a fire. He was not deterred by his knowledge.

We agree with Justice WILLIAMS that testimony of the later repair of the truck was properly disallowed. We cannot say that the judge abused her discretion in excluding the last minute expert testimony of Dr. Bolt.

## IV

We agree with the Court of Appeals that the alleged defect was not proved and even if it had been, no causal connection between the defect and the injury was established.

We would affirm the Court of Appeals.

Fitzgerald and Ryan, JJ., concurred with Coleman, J.

Blair Moody, Jr., J., took no part in the decision of this case.

Williams, J. *(for reversal).* This case is an appeal of a directed verdict granted defendant manufacturer where plaintiff was a truck owner's mechanic who was seriously burned in an explosion while attempting to repair a defective truck, manufactured and warranted by defendant manufacturer.

Plaintiff claims liability based in the alternative on the manufacturer's express warranty, implied warranty, and negligence.

We are asked to resolve two general questions: first, whether the evidence presented by the plaintiff, when examined in a light most favorable to the plaintiff, as required in reviewing a directed verdict, constituted under one of the theories pled a prima facie case of liability which would take the case to jury. In addition, there was a question whether certain evidence submitted by plaintiff was improperly excluded at trial.

We hold that there was sufficient evidence on the negligence theory presented by plaintiff at trial to take the case to the jury, and that the exclusion of certain evidence was proper.

## I—FACTS

This suit arises out of a serious accident in which plaintiff, a mechanic for Groesbeck Lumber Company, suffered severe burns while attempting to repair the engine of a truck manufactured and sold by defendant, General Motors Corporation.

Testimony submitted by plaintiff at trial provides the following sketch of the events leading up to the accident. The truck involved, referred to as No. 65, was sold to Groesbeck Lumber Company under a 100,000 mile warranty. From the time of purchase, No. 65 suffered power loss problems, particularly when it carried two loaded trailers. No. 65 would not accelerate properly, and its engine would often miss and "pop". The truck was returned to GM Service numerous times to correct these problems, but GM was unable to do so.

Groesbeck Lumber tried to use the truck in spite of the power loss problems after these unsuccessful attempts at repair, until the truck became undriveable. Once again the truck was taken to GM Service, once again to no avail.

GM Service subsequently sent a man to Groesbeck to take No. 65 on a test drive. After the test run, the representative from GM Service told one Mr. Arthur Smith, a manager at Groesbeck, "you have got a problem, I don't know what to do, you fix it".

As a result, plaintiff Crews attempted to repair No. 65, which had a V-12 engine. In so doing, Crews referred to the V-12 section of the GMC Maintenance Manual. The manual contained a warning to disconnect the ignition of V-6 engines but there was no such warning for V-12 engines. The warning for V-6 engines was printed in the introductory general comments and read as follows:

"CAUTION: Since on the V-6 engines, the ignition coil is fed through the starter solenoid during cranking, the engine will have a tendency to start any time it is cranked even though the ignition switch may be in the 'OFF' position. To prevent this from happening and possibly causing serious injury, always disconnect ignition primary wire from coil before making tests which require cranking the engine."

The engine which plaintiff attempted to repair was a V-12, not a V-6, and plaintiff did not disconnect the primary wire.

Testimony was presented at trial during the plaintiff's case in chief indicating that the failure to disconnect these wires did in fact cause the explosion which so badly burned plaintiff. Testimony was conflicting, as discussed below, as to whether the absence of reference to V-12 engines in the manual's warning contributed to plaintiff's failure to disconnect the primary wires.

In November of 1967, plaintiff Crews sued General Motors in Wayne County Circuit Court pleading breach of express and implied warranties, plus negligence in defendant's failure to make adequate repairs to the truck engine and failure to complete repairs on that engine.

At trial, the trial judge excluded much of the testimony of plaintiff's expert witness, Mr. Bolt, because General Motors had not been given the opportunity to discover and prepare for such testimony. The trial court also excluded evidence of General Motors' repair of the engine after the explosion which injured Mr. Crews. Finally, the trial court granted defendant General Motors a directed verdict. The precise reasons for the directed verdict are not clear from the somewhat garbled record before us.

The Court of Appeals affirmed, concluding that

even if the evidence produced at trial did show a defect in the engine, there was no evidence that the defect caused the accident.

We granted leave to appeal on August 19, 1975.

## II—SUFFICIENCY OF THE EVIDENCE FOR JURY TRIAL

At the threshold, we must recognize the well-established principles that must guide us in reviewing a directed verdict. These principles were very well summarized by my Brother Justice FITZGERALD in a recent case, *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975):

"The jury, not the trial judge, is the trier of fact. Whenever a fact question exists, upon which reasonable persons may differ, the trial judge may not direct a verdict. Conversely, when no fact question exists, the trial judge is justified in directing a verdict. In deciding whether or not to grant a motion for a directed verdict, the trial judge must accord to the non-moving party the benefit of viewing the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the non-moving party. If the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict must be denied. In *Detroit & M R Co v Van Steinburg,* 17 Mich 99, 117 (1868), Chief Justice THOMAS M. COOLEY said:

" 'In determining this question, we must look at the case as it appears from the plaintiff's own testimony, unqualified by any which was offered on the part of the defendants, and must concede to him any thing which he could fairly claim upon that evidence. He had a right to ask the jury to believe the case as he presented it; and, however improbable some portions of his testimony may appear to us, we can not say that the jury might not have given it full credence. It is for them, and not for the court to compare and weigh the evidence.' "

Plaintiff in the instant case is suing defendant alleging liability for personal injuries caused by the explosion of the truck manufactured and sold by defendant to plaintiff's employer.

Plaintiff alleges that this liability may be grounded on the express warranty on the truck, on implied warranty or on negligence concepts.

The Court of Appeals apparently focused on the implied warranty theory, and affirmed the trial court's directed verdict because it found no causal connection between an allegedly defective hydraulic intake valve lifter system and the accident which caused plaintiff's injuries.

We need express no opinion on this conclusion of the Court of Appeals, for we have concluded upon examination of the record that sufficient evidence was presented in the plaintiff's case in chief to take this case to the jury on the negligence theory.

Plaintiff alleged in his complaint in part that defendant was negligent in failing to make adequate repairs and in failing to complete the needed repairs of the truck engine.

In order to avoid a directed verdict for the defendant, plaintiff must make out a prima facie case of negligence, which includes proofs of the four elements of negligence:

1) that the defendant owed a legal duty to the plaintiff;

2) that the defendant breached or violated the legal duty it owed to the plaintiff;

3) that the defendant's breach of duty was a proximate cause of the damages suffered by the plaintiff; and

4) that the plaintiff suffered damages. *Roulo v Automobile Club of Michigan,* 386 Mich 324, 328; 192 NW2d 237 (1971); *Clark v Dalman,* 379 Mich 251, 260; 150 NW2d 755 (1967).

Plaintiff argues before us, in part, that General Motors was under a contractual duty, under the warranty, to repair the truck, that General Motors did not fulfill that duty, that the accident would not have happened but for the failure to repair, that it was foreseeable that plaintiff would have to repair the truck given General Motors' failure to repair, and that if not disconnecting the primary ignition wires was responsible for the explosion, General Motors' repair manual gave no cautionary instruction on the need to disconnect these wires on a V-12 engine.

The threshold question under this theory in determining the validity of the directed verdict is whether General Motors was under a duty to the plaintiff.

Evidence was presented at trial that General Motors had warranted the truck which was involved in the accident, and that under this warranty General Motors was under a contractual duty to repair the truck at the time of the accident.

There is little doubt that a duty underlying an action in tort may arise out of a contractual relationship. This proposition was firmly established in *Clark v Dalman,* 379 Mich 251; 150 NW2d 755 (1967). In *Clark,* defendant had entered into a contract with the city to repair, clean and paint a water storage tank owned by the city. Defendant contractor was obligated by the contract to notify the consulting engineer on the project in advance of the initiation of any stage of the project. Plaintiff was an employee of the consulting-engineering firm who was injured upon slipping to the bottom of the water tank. It was alleged that plaintiff had slipped because of the failure of defendant to notify the consulting firm

that the tank had been coated with a greasy compound.

In reversing a directed verdict for defendant, this Court found that defendant did owe a duty to plaintiff, who was not a party to the contract arising out of defendant's contractual relationship with the city, stating as follows:

"Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law.

\* \* \*

"Such duty of care may be a specific duty owing to the plaintiff by the defendant, or it may be a general one owed by the defendant to the public, of which the plaintiff is part. *Moreover, while this duty of care,* as an essential element of actionable negligence, *arises by operation of law, it may and frequently does arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract."* (Emphasis added.) 379 Mich 251, 260–261.

See also *Williams v Polgar,* 391 Mich 6, 18–19; 215 NW2d 149 (1974), and the cases cited therein.

However, a tort action will not lie when based *solely* on nonperformance of a contractual duty. See *Hart v Ludwig,* 347 Mich 559; 79 NW2d 895 (1956); *Chase v Clinton County,* 241 Mich 478; 217 NW 565 (1928); *Churchill v Howe,* 186 Mich 107; 152 NW 989 (1915).

The instant case is not based merely on the alleged failure of General Motors to perform its contractual duty to repair. In determining the existence of a duty which will support a tort action, we must look to all the relevant facts of

the case. The importance of examining the context of an alleged nonperformance of a contractual duty was well described in *Hart v Ludwig, supra,* as follows:

"The division thus made, between misfeasance, which may support an action either in tort or on the contract, and the nonfeasance of a contractual obligation, giving rise only to an action on the contract, is admittedly difficult to make in borderland cases. *There are,* it is recognized, *cases in which an incident of nonfeasance occurs in the course of an undertaking assumed.* Thus a surgeon fails to sterilize his instruments, an engineer fails to shut off steam [citation omitted], a builder fails to fill a ditch in a public way [citation omitted]. *These are all, it is true, failures to act, each disastrous detail, in itself, a 'mere' nonfeasance. But the significant similarity relates not to the slippery distinction between action and nonaction but to the fundamental concept of 'duty'; in each a situation of peril has been created, with respect to which a tort action would lie without having recourse to the contract itself. Machinery has been set in motion and life or property is endangered.* It avails not that the operator pleads that he simply failed to sound the whistle as he approached the crossing." (Emphasis added.) 347 Mich 559, 564–565.

To the same effect is the lucid discussion of tort liability arising out of nonperformance of a contractual duty in 2 Harper and James, The Law of Torts:

"[W]hat may be viewed as negligent omission, so far as the individual contract goes, may wear the color of active negligence if the whole venture or enterprise is thought of—in very much the same way as the omission to inspect and repair a machine is regarded as active negligence on the part of him who continues to operate the machine without taking the precautions. So wherever the problem comes up in this context, a duty of care to perform such a contract may be justified by

projecting into this field the pervading principles of negligence law* * * . Such a duty would be owed to those foreseeably injured by the negligent nonperformance in a way over and above the withholding of the benefit contracted for, without regard to any question of reliance [by the plaintiff on the contractual promise] in the specific case." p 1052.

When we look to the facts of the instant case in their entirety, it is clear General Motors' refusal to perform its contractual obligation to repair the truck arose in a context in which a situation of peril had been created by General Motors through affirmative conduct in two respects. Moreover, the evidence indicates that it was clearly foreseeable that the failure to repair would expose a person in plaintiff's position to the danger created through General Motors' affirmative conduct.

First, examination of the record reveals that the GMC Maintenance Manual failed to instruct the reader that the primary ignition wires should be disconnected on a V-12 engine before making repairs that involved cranking the engine. Testimony was taken at trial indicating that plaintiff's failure to disconnect these wires on the V-12 engine which he was attempting to repair caused the explosion which injured plaintiff. Clearly then, the evidence supports the conclusion that General Motors had in fact created a situation of peril.

Second, the evidence further indicates that General Motors did not merely refuse to repair the engine on truck No. 65, but directed plaintiff's employer to fix it, stating through its service representative, "you have got a problem, I don't know what to do, *you fix it"* (emphasis added). Through this directive, through its refusal to repair, and through the failure to warn of the need to discon-

nect the ignition wires, General Motors exposed plaintiff to a situation of peril which may well have caused his injury.

Moreover, the fact that General Motors specifically directed plaintiff's employer to fix the engine indicates that it was clearly foreseeable that a person in plaintiff's position would be exposed to the dangers inherent in the situation created by General Motors.

Given all these facts, there can be little doubt that General Motors was under a duty to plaintiff which can serve as a basis for plaintiff's negligence theory in this suit.

Nor is there question that plaintiff has presented sufficient evidence, when looked at in the light most favorable to plaintiff, on the other three elements of a negligence action to take this case to the jury.

Certainly there was evidence that General Motors breached the duty to plaintiff to repair the engine outlined above. The record indicates that the General Motors representative who had been sent from the service department to look into the problem of truck No. 65, stated after taking a test ride, "We can't fix it, you fix it".

As for proximate cause, there was evidence presented at trial which would support a jury finding that the failure to repair the truck was the proximate cause of the injury to Mr. Crews.

The cornerstone of the concept of proximate cause is foreseeability. Certainly, a jury might conclude that it was foreseeable that, subsequent to the refusal to repair, a mechanic from Groesbeck would be asked to repair the truck, and that the mechanic would rely on the GMC service manual. In fact, given the directive from the General Motors' representative to plaintiff's employer

that he fix it, such a course of events was virtually inevitable.

We have seen that the service manual referred to by Mr. Crews contained a caution which advised that *on V-6 engines* the primary ignition wires should be disconnected before conducting any tests requiring that the engine be cranked. No such admonition was given for V-12 engines, which was the type of engine Mr. Crews was working on at the time of the accident. Testimony was presented at trial that the cause of the accident was the failure to disconnect the primary wire.

Testimony is conflicting as to whether the failure to warn of the necessity to disconnect the primary ignition wires on a V-12 engine was the reason that Mr. Crews did not disconnect the wires.

On the one hand, Crews testified that he thought the V-6 and the V-12 were two completely different engines. He further testified he did not think that the V-12 engine would spark and ignite the gas, as would happen on a V-6. And finally, Crews testified that in referring to the manual, he read through only the section labeled for V-12 engines. This necessarily excluded reference to the warning in the maintenance manual which if properly drafted might have prevented a terrible accident.

On the other hand, Crews, at another point in the trial, testified that he knew, without referring to the maintenance manual, that he should disconnect the primary ignition wires on a V-12 engine.

Given that in reviewing a directed verdict we are required to look at the evidence in the light most favorable to plaintiff, we conclude that the conflicting testimony cited above presented a factual question which must be decided by a jury. A

jury might reasonably conclude that the failure to repair, in the context of the allegedly deficient warning in the maintenance manual, and the directive of the General Motors representative to plaintiff's employer to fix the engine, constituted a proximate cause of plaintiff's injury.

Finally, there was evidence of the last element necessary to make out a case of negligence, injury to plaintiff. Plaintiff was terribly burned in the explosion. His burns necessitated 63 operations between 1964 and 1972. His ears were amputated. He has lost much of the use of his hands and arms. Crews was unable to engage in employment from the time of the accident in 1964 until 1972, and even after 1972, his ability to work was substantially impaired.

In sum, upon examination of the record, looking at the evidence in the light most favorable to plaintiff, we conclude that sufficient evidence of negligence by defendant General Motors was presented in plaintiff's case in chief to require presentation of the question to the jury. We therefore reverse the trial court's directed verdict, and remand for a new trial.

## III—ADMISSIBILITY OF EVIDENCE

Appellant also appeals the trial court's exclusion of 1) testimony of an expert witness, Dr. Bolt, on the allegedly defective intake system, and 2) testimony of General Motors' repair of the truck engine after the explosion.

With regard to the exclusion of Dr. Bolt's testimony, the trial court rested its ruling on the purported unfair surprise and prejudice to General Motors which would have resulted if Dr. Bolt's testimony had been admitted.

We need not express an opinion on this ruling of the trial court, for given our remand for new trial, General Motors will now have the opportunity to depose Dr. Bolt and properly prepare for his testimony if plaintiff chooses to call upon him once again for expert testimony.

As for the exclusion of the evidence of the repair of the engine, particularly the valve system, after the fire, such exclusion was permissible under Michigan's rule against the admission of subsequent repair to show negligence. *Judis v Borg-Warner Corp,* 339 Mich 313, 325; 63 NW2d 647 (1954); *Grawey v Genesee County Road Commission,* 48 Mich App 742, 749; 211 NW2d 68 (1973).

## IV—Conclusion

We hold that sufficient evidence of defendant's negligence has been presented in plaintiff's case in chief to present a jury question. We therefore reverse the trial court's directed verdict and remand for new trial.

We also hold that the trial court's exclusion of evidence of General Motors' repairs of the engine in question subsequent to the accident was correct.

Kavanagh, C. J., and Levin, J., concurred with Williams, J.