*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COUNTY OF INGHAM, COUNTY OF JACKSON, and COUNTY OF CALHOUN,

UNPUBLISHED
July 14, 2022

Plaintiffs-Appellants,

v

No. 334077
Ingham Circuit Court
LC No. 15-000432-NZ

MICHIGAN COUNTY ROAD COMMISSION SELF-INSURANCE POOL,

Defendant-Appellee.

## ON SECOND REMAND

Before: O'BRIEN, P.J., GLEICHER, C.J., and STEPHENS, J.

PER CURIAM.

Following this Court's decision in *Ingham Co v Mich Co Rd Comm Self-Ins Pool*, 321 Mich App 574; 909 NW2d 533 (2017) (*Ingham Co I*), defendant, Michigan County Road Commission Self-Insurance Pool (the Pool), sought leave to appeal in our Supreme Court. In lieu of granting leave to appeal—and without vacating or reversing any portion of *Ingham Co I*—the Court remanded to this Court with instructions to consider whether certain documents were "binding on the parties, and, if so, what effect they [had] on the plaintiffs' entitlement to refunds." *Ingham Co v Mich Co Rd Comm Self-Ins Pool*, 503 Mich 917 (2018) (*Ingham Co II*). On remand, this Court considered the documents identified by our Supreme Court and again concluded that plaintiffs—Ingham County, Jackson County, and Calhoun County (collectively, the counties)—were entitled to refunds of their surplus premiums from prior-year contributions. *Ingham Co v Mich Co Rd Comm Self-Ins Pool (On Remand)*, 329 Mich App 295, 298; 942 NW2d 85 (2019) (*Ingham Co III*). To reach this conclusion, this Court reasoned in pertinent part that, although the withdrawal policy in the documents—which precluded plaintiffs from receiving refunds—was binding, it was unenforceable as contrary to public policy. *Id*. at 317-323. The Pool again appealed to our Supreme Court, who reversed. The majority of that Court summarized its holding (and offered remand instructions) as follows:

We conclude . . . that the Pool's limitation of membership to "county road commissions" and its chosen method of distributing surplus equity reflect the documents forming the parties' agreement and are not contrary to the public policy of this state.

In their claim of appeal from the circuit court's order, the Counties argued that the circuit court erred by dismissing the Counties' claims of unconstitutional lending, extortion, and conversion. The Court of Appeals did not address these arguments in *Ingham Co I*. We reverse the Court of Appeals' judgment that the Pool's withdrawal policy is contrary to public policy and that Jackson County became a member of the Pool upon the dissolution of its county road commission, and we remand to that Court for consideration of those arguments raised by the Counties but not addressed in *Ingham Co I*. We do not retain jurisdiction. [*Ingham Co v Mich Co Rd Comm Self-Ins Pool*, ___ Mich ___, ___; ___ NW2d ___ (2021) (*Ingham Co IV*) (Supreme Court Docket No. 160186); slip op at 22 (citation omitted).]

For the reasons set forth in this opinion, we conclude that the trial court did not err by dismissing the counties' claims for unconstitutional lending, extortion, and conversion. We therefore affirm the trial court's ruling in those respects.

## I. BACKGROUND

This Court summarized the pertinent factual history of this case in *Ingham Co I*, 321 Mich App at 577-579, as follows:

A Declaration of Trust created the Pool in April 1984. The Pool's bylaws limit membership to county road commissions located in the state of Michigan and require each member to sign an inter-local agreement. The appointed road commissions for Ingham County, Jackson County, and Calhoun County joined the Pool soon after its formation.

Members of the Pool made annual premium contributions to cover the payment of claims and the Pool's operating and administrative expenses. The Pool's bylaws and the inter-local agreements permitted the refund of surplus funds more than one year after payment of a member's premium contribution. The counties alleged that the Pool had a longstanding practice of refunding excess contributions to members out of unused reserves in proportion to premiums paid, typically calculated and refunded several years later.

In February 2012, the Legislature amended MCL 224.6 to permit transfer of "the powers, duties, and functions that are otherwise provided by law for an appointed board of county road commissioners . . . to the county board of commissioners by resolution as allowed under . . . MCL 46.11." MCL 224.6(7), as amended by 2012 PA 14. At the same time, the Legislature amended MCL 46.11 to give a county board of commissioners the authority to pass a resolution dissolving an appointed road commission and transferring the road commission's

-2-

"powers, duties, and functions" to the county board of commissioners. 2012 PA 15. Pursuant to these amendments, the Ingham County, Jackson County, and Calhoun County Boards of Commissioners adopted resolutions to dissolve their county road commissions and take over their roles.

Ingham County adopted the dissolution resolution on April 24, 2012, effective June 1, 2012. About two weeks before adopting the resolution, Ingham County paid its contribution to the Pool for the fiscal year beginning April 1, 2012, apparently with the understanding that the Pool intended to amend its rules to permit the county successors to the dissolved road commissions to participate in the Pool. Ingham County maintained that it only learned later in May that the Pool would not allow the county to remain a member of the Pool. On May 30 and 31, 2012, the Ingham County road commission signed two agreements—one to withdraw from the Pool and one to cancel insurance through the Pool—effective June 1, 2012.

Calhoun County signed a similar withdrawal agreement on October 23, 2012, effective November 1, 2012. It appears that Jackson County did not sign a withdrawal agreement.

At Ingham County's request, the Pool agreed to refund the unused pro rata portion of the former road commission's annual contribution for the 2012–2013 fiscal year. The Pool declined, however, to refund surplus equity flowing from prior-year contributions because of the road commission's withdrawal from membership in the Pool.

The counties brought a four-count complaint against the Pool. The counties alleged that they were eligible for 10 years' worth of refunds because the Pool was still refunding contributions from 2002 premiums. The Pool refused to issue those refunds to the counties. Consequently, the counties maintained that the Pool's refusal reflected (1) unconstitutional lending under Const. 1963, art. 9, § 18; (2) extortion; (3) conversion; and (4) breach of contract. The Pool denied the counties' allegations and disputed their claims.

The counties filed a partial motion for summary disposition as to liability under MCR 2.116(C)(9) and (10). The Pool filed a cross-motion for summary disposition under MCR 2.116(I)(2). The trial court granted summary disposition under MCR 2.116(I)(2) in favor of the Pool, rejecting all of the counties' arguments.

The appellate history chronicled at the outset of this opinion, spanning *Ingham Co I* through *Ingham IV*, ensued. Per our Supreme Court, we are now to consider "those arguments raised by the Counties but not addressed in *Ingham Co I*"—i.e., "the Counties' claims of unconstitutional lending, extortion, and conversion." *Ingham Co IV*, ___ Mich at ___; slip op at 22.

-3-

## II. STANDARD OF REVIEW

A trial court's decision concerning summary disposition is reviewed de novo. *Heaton v Benton Constr Co*, 286 Mich App 528, 531; 780 NW2d 618 (2009). The counties moved for summary disposition under MCR 2.116(C)(9) and (10), but because the trial court considered evidence aside from the pleadings, the motion is considered as having been brought under only MCR 2.116(C)(10). See *Sisk-Rathburn v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 425, 427; 760 NW2d 878 (2008) (explaining that a motion is considered "as having been pursuant only to MCR 2.116(C)(10)" when "the trial court examined evidence outside the pleadings"); *Ingham Co I*, 321 Mich App at 579 (explaining that, in a motion brought under MCR 2.116(C)(9), "the trial court may only consider the pleadings"). The trial court, however, ultimately granted summary disposition to the Pool under MCR 2.116(I)(2). Summary disposition under that rule is proper "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment[.]" MCR 2.116(I)(2). Accordingly, in analyzing the trial court's decision to grant summary disposition under MCR 2.116(I)(2), we will utilize the general standard of review that applies to a motion under MCR 2.116(C)(10). As this Court has explained:

> A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotations marks and citations omitted).]

"We also review de novo questions regarding the proper interpretation of our 1963 Constitution." *O'Connell v Dir of Elections*, 316 Mich App 91, 97; 891 NW2d 240 (2016). "The primary objective in interpreting a constitutional provision is to determine the text's original meaning to the ratifiers, the people, at the time of ratification." *Studier v Mich Pub Sch Employees' Ret Bd*, 472 Mich 642, 652; 698 NW2d 350 (2005) (quotation marks and citation omitted). To that end, "we apply the plain meaning of each term used . . . at the time of ratification unless technical, legal terms were employed." *Id*.

## III. UNCONSTITUTIONAL LENDING

Const 1963, art 9, § 18 provides: "The credit of the state shall not be granted to, nor in aid of any person, association or corporation, public or private, except as authorized in this constitution." The fundamental purpose underlying this provision "is to make certain that the State, which itself cannot borrow, except as authorized, does not accumulate unauthorized debts by indorsing or guaranteeing the obligations of others." *In re Advisory Opinion on Constitutionality of Act No 346 of Pub Acts of 1966*, 380 Mich 554, 564; 158 NW2d 416 (1968). Further, Const 1963, art 9, § 18 applies only to "political subdivisions and instrumentalities of the state," *In re Request for Advisory Opinion on Constitutionality of 1986 PA 281*, 430 Mich 93, 119;

422 NW2d 186 (1988) (*Advisory Opinion*), including counties, *Wayne Co Bd of Comm'rs v Wayne Co Airport Auth*, 253 Mich App 144, 181; 658 NW2d 804 (2002). Accordingly, as a threshold matter, Const 1963, art 9, § 18 is applicable only when the conduct in dispute constitutes both "a loan of credit" and one made "by the state or one of its municipalities." *Advisory Opinion*, 430 Mich at 119-120.[1]

In addition, "Const 1963, art 9, § 18 is violated *only* when the state creates an obligation legally enforceable against it *for the benefit of another*." *Wayne Co Bd of Comm'rs*, 253 Mich App at 182, (quotation marks and citation omitted). Indeed, Const 1963, art 7, § 28 provides:

> The legislature by general law *shall* authorize two or more *counties*, townships, cities, villages or districts, or any combination thereof *among other things* to: *enter into contractual undertakings or agreements with one another* or with the state or with any combination thereof for the joint administration of any of the functions or powers which each would have the power to perform separately; *share the costs and responsibilities of functions and services with one another* or with the state or with any combination thereof which each would have the power to perform separately; transfer functions or responsibilities to one another or any combination thereof upon the consent of each unit involved; cooperate with one another and with state government; *lend their credit to one another or any combination thereof as provided by law in connection with any authorized publicly owned undertaking*. [Emphasis added.]

It is also notable that, under Const 1963, art 7, § 1, "[e]ach organized county shall be a body corporate with powers and immunities provided by law," and, pursuant to Const 1963, art 7, § 34, constitutional provisions "concerning counties . . . shall be liberally construed in their favor," and the "[p]owers granted to counties . . . shall include those fairly implied and not prohibited by th[e] constitution."

Applying these principles to the instant case, assuming without deciding that (1) Const 1963, art 9, § 18 applies to county road commissions as instrumentalities of the state or its political subdivisions,[2] and (2) the self-insurance pool here involved a lending of state "credit," the arrangement is still permissible under Const 1963, art 9, § 18 because any loan of credit was made

---

[1] Const 1963, art 7, § 26 provides "an exception to the general rule of art 9, § 18, governing the lending of credit by municipalities." *Advisory Opinion*, 430 Mich at 119. By its own terms, however, Const 1963, art 7, § 26 applies to loans of credit by a "city or village," it is seemingly inapplicable to the counties (and their no-longer-extant road commissions) at issue here.

[2] "A board of county road commissioners is not a municipal corporation; however, it is a 'body corporate' that 'shall act as an administrative board only' and whose function 'shall be limited to the formation of policy and the performance of official duties imposed by law . . . .'" *Oakland Co Bd of Co Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 609; 575 NW2d 751 (1998) (citation omitted). But see MCL 691.1401(e) (providing that a "county road commission" qualifies as a "political subdivision" of the state for purposes of the governmental tort liability act (GTLA), MCL 691.1401 *et seq*.).

between political subdivisions of the state (or their road-commission instrumentalities) and the agreement is not enforceable against the state for the benefit of some other entity. See *Wayne Co Bd of Comm'rs*, 253 Mich App at 182. Rather, the parties' agreement—including its punitive withdrawal policy—is only enforceable as against the member road commissions for the benefit of the other road commissions and the Pool as a whole. It follows that if the member road commissions qualify as instrumentalities of the state (or its political subdivisions), then any lending of credit does not offend Const 1963, art 9, § 18. Alternatively, if the road commissions do not qualify as instrumentalities of the state (or its political subdivisions) for the instant purposes, then Const 1963, art 9, § 18 is inapplicable in the first instance. See *Advisory Opinion*, 430 Mich at 119-120 (observing that Const 1963, art 9, § 18 only applies to the lending of "state" credit). Accordingly, the trial court did not err by granting summary disposition in favor of the Pool on the counties' unconstitutional lending claim.

## IV. CONVERSION

In the trial court, the counties asserted a claim for statutory conversion. Claims for statutory conversion arise under MCL 600.2919a.[3] *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 9-10; 779 NW2d 237 (2010). To prevail on such a claim, a plaintiff must satisfy all of the elements for common-law conversion and also "show that the conversion was for the defendant's 'own use.' " *Magley v M & W Inc*, 325 Mich App 307, 315-316 n 3; 926 NW2d 1 (2018) (quotation marks and citation omitted). Therefore, a claim of statutory conversion must be supported by proof that (1) the defendant willfully engaged in a "distinct act of domain wrongfully exerted over [the plaintiff's] personal property in denial of or inconsistent with the rights therein"; and (2) the defendant converted the property to his or her "own use" by "employ[ing] the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Id*. at 315-316 & n 3 (quotation marks and citations omitted). Because the counties are alleging that the Pool converted money, they must also establish that the Pool "obtained the money without [the countries'] consent to the creation of a debtor-creditor relationship and must have had an obligation to return the specific money entrusted

---

[3] MCL 600.2919a provides:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

> (a) Another person's stealing or embezzling property or converting property to the other person's own use.

> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

to [its] care." *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 591; 683 NW2d 233 (2004) (quotation marks and citation omitted).

The trial court properly dismissed the counties' statutory conversion claim for at least two reasons. First, conversion sounds in tort, *Elia Companies, LLC v Univ of Mich Regents*, 335 Mich App 439, 450; 966 NW2d 755 (2021), and "the distinguishing feature of a tort [is] that it consists in the violation of a right given or neglect of a duty imposed by law, *and not by contract*," *In re Bradley Estate*, 494 Mich 367, 383; 835 NW2d 545 (2013) (quotation marks and citation omitted; emphasis added; alteration in original). Accordingly, as a general rule, "a tort action will not lie when based solely on nonperformance of a contractual duty." *Crews v Gen Motors Corp*, 400 Mich 208, 226; 253 NW2d 617 (1977).

For the reasons explained in Section III of this opinion, the parties' agreement was not unenforceable as an unconstitutional lending of state credit under Const 1963, art 9, § 18. Further, in *Ingham Co IV*, ___ Mich at ___; slip op at 22, our Supreme Court expressly reversed this Court's holding that the parties' agreement was unenforceable as against public policy. The counties have not offered any other argument suggesting that an enforceable contractual agreement does not exist in this case. On the contrary, in their complaint, the counties admitted that their statutory-conversion claim against the Pool was based on its refusal to comply with an alleged contractual duty: the purported duty to issue "shares of surplus that would otherwise be or have been distributed, for actuarial years 2002-2012, to the appointed road commissions" of the counties under the terms of the parties' agreement.

When, as here, a tort claim is "based on a contract and brought by a plaintiff who is not a party to that contract," "the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations." *Fultz v Union-Commerce Assoc*, 470 Mich 460, 467; 683 NW2d 587 (2004). "If no independent duty exists, no tort action based on a contract will lie." *Id*. Because the counties have not alleged that the Pool's duty to refund the specific funds at issue here was noncontractual, the trial court reached the correct result by granting summary disposition in favor of the Pool on the counties' statutory conversion claim.

Second, even if the counties were entitled to bring an action for conversion based on the Pool's nonperformance of its alleged contractual duty, the counties have still not set forth a prima facie case for statutory conversion of money. In *Ingham Co IV*, ___ Mich at ___; slip op at 18, our Supreme Court expressly ruled that, under the terms of the parties' agreement, "even if the Pool experiences a surplus for any fiscal year between 2002 and 2012 and makes distributions accordingly, the Inter-Local Agreements did not provide the dissolved county road commissions (and by extension, do not provide the Counties) with the right to share in any such distribution." In light of that holding, the counties cannot satisfy several of the essential elements for statutory conversion—the counties cannot demonstrate (1) that the Pool had any obligation to return the specific funds at issue here to the counties, (2) that the Pool acted wrongfully by refusing to do so upon demand, or (3) that the Pool's exercise of dominion over the disputed funds was inconsistent with any right the counties might have had to those funds. Accordingly, for this reason as well, the trial court reached the correct result by granting summary disposition in favor of the Pool on the counties' statutory conversion claim.

## V. EXTORTION

In the trial court, the counties sought to pursue a civil claim against the Pool for violation of this state's penal statute concerning the offense of extortion, MCL 750.213,[4] and the Pool challenged whether this was permissible. Assuming without deciding that the counties were entitled to assert a claim for extortion based on MCL 750.213, the trial court did not err by granting the Pool judgment as a matter of law with regard to the underlying merits of that claim. In *People v Harris*, 495 Mich 120, 128-129; 845 NW2d 477 (2014), our Supreme Court held that the elements of extortion under MCL 750.213 are as follows:

> [T]he crime of extortion is complete when a defendant (1) either orally or by a written or printed communication, maliciously threatens (2) to accuse another of any crime or offense, or to injure the person or property or mother, father, spouse or child of another (3) with the intent to extort money or any pecuniary advantage whatever, or with the intent to compel the person threatened to do or refrain from doing any act against his or her will. [Emphasis omitted.]

In the wake of *Ingham Co IV*, the second element is dispositive here.

In their initial brief on appeal in *Ingham Co I*, the only argument the counties offered on the second element for extortion—i.e., whether the Pool either threatened to accuse another of some crime or offense, or to injure the person or property or mother, father, spouse or child of another—concerned a purported threat to property. The counties argued that the Pool had threatened to "punish" the counties for "exercising their newly acquired rights" to dissolve their road commissions "by stealing their successor shares of distributions of surplus reserves for actuarial years 2002-2012." But in *Ingham Co IV*, ___ Mich at ___; slip op at 18, our Supreme Court expressly ruled that, under the terms of the parties' agreement, "even if the Pool experiences a surplus for any fiscal year between 2002 and 2012 and makes distributions accordingly, the Inter-Local Agreements did not provide the dissolved county road commissions (and by extension, do not provide the Counties) with the right to share in any such distribution." See also *id.* at ___; slip op at 17 ("Jackson County, like Ingham and Calhoun Counties, does not have a contractual right to share in any distributions made after the effective date of the dissolution of its road commission"). Given that our Supreme Court has already determined that the counties had no legal *right* to the distributions that the Pool allegedly threatened to "steal[]" from the counties, the counties' allegations fail to set forth a prima facie case with regard to the second element for a civil claim of extortion under MCL 750.213.

---

[4] In pertinent part, MCL 750.213 provides:

> Any person who . . . shall orally or by any written or printed communication maliciously threaten any injury to the person or property . . . of another with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Moreover, still assuming that a valid cause of action for extortion exists under MCL 750.213 *and* assuming that the counties' allegations set forth a prima facie case for such a claim, their claim would still fail because it would presumably sound in tort, specifically as an intentional tort. See *Harris*, 495 Mich at 128-129 (stating elements for the criminal offense of extortion that include malice and other specific intents); *In re Bradley Estate*, 494 Mich at 383 (explaining that "the distinguishing feature of a tort [is] that it consists in the violation of a right given or neglect of a duty imposed by law, *and not by contract*") (quotation marks and citation omitted; emphasis added; alteration in original). Just as the counties' claim for statutory conversion will not lie because it is a tort claim based on the Pool's alleged failure to perform a contractual duty, the instant extortion claim will not lie because it is also a tort claim founded on the Pool's alleged threat to exercise its contractual rights. See *Fultz*, 470 Mich at 467; *Crews*, 400 Mich at 226. For these reasons, the trial court did not commit error warranting reversal by granting summary disposition in favor of the Pool on the counties' extortion claim.[5]

## VI. CONCLUSION

Affirmed.

/s/ Colleen A. O'Brien
/s/ Elizabeth L. Gleicher

Stephens, J., Not participating.

---

[5] In *Ingham Co I* and *Ingham Co III*, this Court did not directly address the counties' argument that the trial erred by granting the Pool summary disposition of the counties' claim alleging breach of contract; instead, this Court reversed and remanded in those prior appeals on alternate grounds. Thus, it could be argued that the breach-of-contract issue falls within the scope of the Supreme Court's remand instructions here. See *Ingham Co IV*, ___ Mich at ___; slip op at 22 (reversing and remanding for this Court's "consideration of those arguments raised by the Counties but not addressed in *Ingham Co I*").

In reality, however, the Supreme Court's decision in *Ingham Co IV* leaves little or nothing for this Court to decide with regard to the counties' breach-of-contract claim. That claim was founded on the counties' contention that they had the contractual right, as successors in interest to their dissolved road commissions, to receive any future distributions of surplus equity from the Pool to which their respective road commissions would have been entitled. Our Supreme Court has, however, already ruled that the counties have no such contractual right. *Ingham Co IV*, ___ Mich at ___; slip op at 17-18 ("Jackson County, like Ingham and Calhoun Counties, does not have a contractual right to share in any distributions made after the effective date of the dissolution of its road commission"). Hence, the trial court did not commit any error requiring reversal by granting summary disposition in favor of the Pool on the counties' breach-of-contract claim.