*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY ANNE MARKEL,

        Plaintiff-Appellant,

v

WILLIAM BEAUMONT HOSPITAL,

        Defendant-Appellee,

and

HOSPITAL CONSULTANTS, PC, LINET LONAPPAN, M.D., and IOANA MORARIU,

        Defendants.

UNPUBLISHED
April 22, 2021

No. 350655
Oakland Circuit Court
LC No. 2018-164979-NH

Before: BECKERING, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals as on leave granted[1] the trial court's order granting in part, and denying in part, William Beaumont Hospital's (Beaumont) motion for summary disposition. We affirm in part and reverse in part.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In early October 2015, plaintiff underwent an endometrial ablation and was discharged the same day. A week later, on October 9, 2015, plaintiff went to Beaumont's emergency department

---

[1] *Markel v William Beaumont Hosp*, 505 Mich 961 (2020).

-1-

complaining of numbness in her feet, back pain, and an inability to urinate. After a blood count, CT scan, and MRI, it was determined plaintiff had degenerative disc disease in her lumbar spine, with several disc extrusions and protrusions, and a urinalysis was conducted. On October 10, 2015, plaintiff was transferred to Beaumont's observation unit and a physician's assistant, Janay Warner, ordered another urinalysis and a urine culture study. Later that afternoon, plaintiff was admitted to the hospital and seen by defendant, Dr. Linet Lonappan. Dr. Lonappan, a board-certified internist and hospitalist, was employed by defendant, Hospital Consultants, PC. Hospital Consultants had an agreement with plaintiff's physician, Dr. John Bonema, to provide treatment for his patients that presented to Beaumont. Dr. Lonappan completed a history of plaintiff, performed a physical examination, and was aware a urine culture study and urinalysis had been ordered.

On the morning of October 11, 2015, plaintiff, whose fever spiked the night before but had returned to normal since, spoke with a pain-medicine physician, Dr. Daniel Sapeika, regarding her back pain. Dr. Sapeika noted plaintiff's desire to be discharged and recommended that, if she were discharged that day, she was to receive an epidural on October 12, 2015, on an outpatient basis. On the afternoon of October 11, 2015, Dr. Lonappan discharged plaintiff from the hospital and instructed her to follow up with neurosurgery, internal medicine, and pain medicine. Approximately three hours later, at 5:47 p.m., a preliminary result from plaintiff's urine culture tested positive for streptococcus agalactiae. Dr. Lonappan testified that although she was aware of the result of plaintiff's urine culture study, she did not believe the standard of care required her to contact plaintiff with the results, nor that the results were relevant to plaintiff's care. On October 12, 2015, the final report for the urine culture study was released and showed plaintiff was positive for Group B Streptococcus. On October 13, 2015, plaintiff returned to Beaumont's emergency department complaining of pain in both knees and pain in multiple joints. Plaintiff was provided intravenous antibiotics, and had surgical drainage of an epidural abscess and revision of her knee replacements. Plaintiff remained admitted to Beaumont until November 22, 2015.

Plaintiff filed a complaint alleging, relevant here, that Dr. Lonappan was negligent and Beaumont was vicariously liable for Dr. Lonappan's negligent acts. Plaintiff alleged Dr. Lonappan was an "actual agent[], apparent agent[], ostensible agent[], servant and/or employee[] of William Beaumont Hospital" and, as a result, Beaumont was "vicariously liable for the negligent acts and/or omissions" of Dr. Lonappan. Beaumont moved for summary disposition under MCR 2.116(C)(10), asserting, in relevant part, that it was not vicariously liable for the allegations against Dr. Lonappan under either an ostensible-agency theory or an actual agency theory. Beaumont argued that it was undisputed that Dr. Lonappan was employed by Hospital Consultants but never employed by Beaumont. Beaumont further asserted that Dr. Lonappan became involved in plaintiff's treatment through an agreement between Hospital Consultants and Dr. Bonema, and asserted that Beaumont did not make any representations to plaintiff to "lead her to believe that an agency existed between the hospital" and Dr. Lonappan. Beaumont noted that, as a result, and on the basis of existing caselaw, it was not vicariously liable for the allegations against Dr. Lonappan and was entitled to summary disposition under MCR 2.116(C)(10).

Plaintiff responded, arguing the existence of an agency relationship was a question of fact for the jury. Plaintiff also argued that, under *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240; 273 NW2d 429 (1978), and its progeny, Dr. Lonappan was the ostensible agent of Beaumont. Plaintiff, pointing to Dr. Lonappan's deposition testimony, asserted she had a reasonable belief that Dr.

Lonappan was acting on Beaumont's behalf. Plaintiff noted that Dr. Lonappan wore a white laboratory coat with credentials from Beaumont as she provided care and treatment to plaintiff, and that Dr. Lonappan introduced herself to patients by stating her name and indicating she was assigned to their care by Beaumont. Further, plaintiff asserted that Dr. Lonappan "made no statements" and "took [no] affirmative action to indicate to [plaintiff] that she was not an employ[ee] of the hospital."

In reply, Beaumont asserted that plaintiff failed to present evidence establishing that Beaumont "made any representation to lead [plaintiff] to reasonably believe that an agency existed between the hospital and" Dr. Lonappan. Quoting this Court's decision in *VanStelle v Macaskill*, 255 Mich App 1; 662 NW2d 41 (2003), Beaumont noted that an agency relationship did not arise simply by virtue of plaintiff going to a hospital for medical care and receiving treatment. Rather, there had to be an action or representation by the medical professional to lead plaintiff to reasonably believe an agency relationship existed. Moreover, Beaumont argued that statements in plaintiff's affidavit were directly contradicted by her deposition testimony, and that she was improperly trying to create a factual issue through her affidavit.

Following a hearing on Beaumont's motion for summary disposition, the trial court concluded Dr. Lonappan was not an actual agent of Beaumont, noting that once Beaumont assigned Dr. Lonappan a patient, Dr. Lonappan was responsible for examining the patient, coming up with a plan for that patient's diagnosis and treatment, and ultimately deciding whether to discharge the patient. The trial court found there was no evidence suggesting "anyone other than Dr. Lonappan had the final say concerning how [p]laintiff (or any other patient) would be treated." Thus, the trial court agreed that summary disposition of plaintiff's claim for vicarious liability against Beaumont was proper because "the undisputed evidence establishe[d] that Dr. Lonappan was not an actual employee or agent of the hospital."

The trial court also agreed with Beaumont that an ostensible agency did not exist between Beaumont and Dr. Lonappan, and, as a result, summary disposition of plaintiff's vicarious-liability claim was also proper on that basis. The trial court found that plaintiff only recalled seeing a "pain doctor" during her time at Beaumont from October 9, 2015 to October 11, 2015, and plaintiff "essentially testified she had no recollection of Dr. Lonappan." The trial court concluded that, "[w]ithout any recollection of Dr. Lonappan, there [was] nothing to support [p]laintiff's claim that she harbored a reasonable belief that Dr. Lonappan was acting as a hospital employee." Moreover, the trial court concluded it could not consider plaintiff's affidavit because it "conflict[ed] with her previous deposition testimony." The trial court also found that while Dr. Lonappan testified she typically informed patients that Beaumont assigned her to their care, there was no indication Beaumont "encouraged Dr. Lonappan to say this or that it acquiesced in the use of this vernacular." The trial court recognized that Dr. Lonappan's laboratory coat indicated an affiliation with Beaumont, potentially supporting a conclusion Beaumont encouraged a belief that Dr. Lonappan was its employee or agent. However, the trial court noted that Dr. Lonappan's laboratory coat also reflected her affiliation with Hospital Consultants. Additionally, the trial court found the affiliations printed on the laboratory coat "immaterial given that Plaintiff does not even recall having seen it."

Plaintiff moved for reconsideration, which was denied. Plaintiff then applied for leave to appeal the trial court's order. This Court denied plaintiff's application for leave to appeal. *Markel*

*v William Beaumont Hosp*, unpublished order of the Court of Appeals, entered November 6, 2019 (Docket No. 350655). Subsequently, plaintiff applied for leave to appeal in our Supreme Court, which remanded the matter to this Court for consideration as on leave granted. *Markel v William Beaumont Hosp*, 505 Mich 961 (2020).

## II. OSTENSIBLE AGENCY

Plaintiff first argues that the trial court erred in concluding Dr. Lonappan was not an ostensible agent of Beaumont and, therefore, wrongly granted summary disposition in Beaumont's favor. We disagree.

This Court reviews a trial court's decision whether to grant or deny a motion for summary disposition de novo. *Ingham Co v Mich Co Rd Comm Self-Ins Pool*, 321 Mich App 574, 579; 909 NW2d 533 (2017), remanded on other grounds by 503 Mich 917 (2018).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999) (citations and quotation marks omitted).]

"Generally speaking, a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients." *Grewe*, 404 Mich at 250. However, a hospital can be "be vicariously liable for the malpractice of actual or apparent agents." *Chapa v St Mary's Hosp of Saginaw*, 192 Mich App 29, 33; 480 NW2d 590 (1991).

> [T]he following three elements . . . are necessary to establish the creation of an ostensible agency: (1) the person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one, (2) the belief must be generated by some act or neglect on the part of the principal sought to be charged, and (3) the person relying on the agent's authority must not be guilty of negligence. [*Id*. at 33-34.]

"To put it another way, the defendant as the putative principal must have done something that would create in the patient's mind the reasonable belief that the doctors were acting on behalf of the defendant hospital." *VanStelle*, 255 Mich App at 10.

> Agency "does not arise merely because one goes to a hospital for medical care. There must be some action or representation by the principal (hospital) to lead the third person (plaintiff) to reasonably believe an agency in fact existed." *Sasseen v Community Hosp Foundation*, 159 Mich App 231, 240; 406 NW2d 193 (1986). Further, the fact that a doctor used a hospital's facilities to treat a patient is not sufficient to give the patient a reasonable belief that the doctor was an agent

of the hospital. *Heins v Synkonis*, 58 Mich App 119, 124; 227 NW2d 247 (1975). [*VanStelle*, 255 Mich App at 11.]

In granting summary disposition to Beaumont on plaintiff's claim of vicarious liability under an ostensible-agency theory, the trial court found plaintiff could not have reasonably believed Dr. Lonappan acted on Beaumont's behalf when, according to her deposition testimony, plaintiff did not actually recall Dr. Lonappan at all. At her deposition, plaintiff testified that "[t]he only [doctor] I remember seeing was . . . they sent one of the pain doctors up about potentially doing an epidural but they couldn't do it because it was the weekend." The following exchange also took place during plaintiff's deposition:

> *Q.* So if there were different doctors from different specialties seeing you to look at what you had going on medically and to try to evaluate it from different perspectives, you may not recall their names but you do recall seeing different doctors, correct?
>
> *A.* I don't.
>
> * * *
>
> *Q.* There's a co-defendant in the case represented by Mr. Sinkoff, her name is Dr. Linet, L-i-n-e-t, Lonappan, L-o-n-a-p-p-a-n, that name is not familiar to you either then?
>
> *A.* Not at all.

Plaintiff's ostensible agency theory was premised an affidavit she attached to her response to Beaumont's motion for summary disposition. In her affidavit, plaintiff contradicted her deposition testimony by stating that she was treated by multiple medical care providers at Beaumont, including Dr. Lonappan. Plaintiff also stated that while Dr. Lonappan provided medical treatment to her, plaintiff "was at all times under the impression" that Dr. Lonappan was Beaumont's employee, and that Dr. Lonappan did not make any statements or take any affirmative actions to indicate to plaintiff that she was not employed by Beaumont. Plaintiff also stated that she "worked for Beaumont Hospital through the Royal Oak system for over thirty (30) years, and as of October 2015, [she] was unaware that the physicians were not employees of the hospital."

The trial court concluded that it could not consider plaintiff's affidavit because it conflicted with her deposition testimony. On appeal, plaintiff asserts the trial court's decision to not consider plaintiff's affidavit was erroneous. We disagree.

"It is well settled that a party may not create an issue of fact by submitting an affidavit that contradicts prior deposition testimony." *Atkinson v City of Detroit*, 222 Mich App 7, 11; 564 NW2d 473 (1997); see also *Casey v Auto Owners Ins Co*, 273 Mich App 388, 396; 729 NW2d 277 (2006) ("[A] witness is bound by his or her deposition testimony, and that testimony cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition."). In her deposition testimony, in response to whether she recalled seeing doctors other than the "pain doctor[]," plaintiff stated, "I don't." And, when explicitly asked whether Dr. Lonappan's name was familiar to her, plaintiff stated, "Not at all." However, in her affidavit, plaintiff states she was

-5-

"treated by multiple medical care providers at William Beaumont Hospital–Royal Oak, including Dr. Linet Lonappan." Plaintiff's affidavit improperly attempts to create an issue of fact that contradicts her previous deposition testimony and, as a result, the trial court did not err in declining to consider it. *Atkinson*, 222 Mich App at 11; *Casey*, 273 Mich App at 396.

Plaintiff alternatively argues that her belief that Dr. Lonappan was Beaumont's ostensible agent was reasonable because (1) Dr. Lonappan's laboratory coat indicated an affiliation with Beaumont and (2) Dr. Lonappan's testimony that she introduced herself to patients by stating her name and indicating Beaumont assigned her to the patient's care. We disagree.

Dr. Lonappan testified that, when working at Beaumont, she typically wore a white laboratory coat with credentials from both Beaumont Health Systems and Hospital Consultants. Dr. Lonappan indicated she did not "have a specific recollection" regarding whether she was wearing those credentials when she saw plaintiff in October 2015, but acknowledged that when she was in the hospital, she wore her laboratory coat and credential. Dr. Lonappan also testified that when she meets a patient for the first time, she introduces herself as Dr. Lonappan. The following exchange took place at Dr. Lonappan's deposition:

> *Q*. Okay. Do you say I'm Dr. Lonappan at Beaumont or I'm Dr. Lonappan at Hospital Consultants, P.C., or just I'm Dr. Lonappan?
>
> *A*. I'm Dr. Lonappan.
>
> *Q*. Okay. And you were assigned Ms. Markel's service by William Beaumont Hospital?
>
> *A*. Yes.
>
> *Q*. Okay. Just foundation.

With respect to the laboratory coat, as the trial court concluded and Dr. Lonappan testified, Dr. Lonappan's laboratory coat indicated not only an affiliation with Beaumont but also with Hospital Consultants. See *VanStelle*, 255 Mich App at 15 (indicating that where a doctor's business card references both a hospital and medical office, there is not necessarily an inference that the doctor is employed by the hospital). Next, although plaintiff repeatedly characterized Dr. Lonappan's testimony as being that Dr. Lonappan typically indicated to patients that she was assigned to their care by Beaumont, the actual testimony of Dr. Lonappan that plaintiff refers to does not state what plaintiff claims. As noted above, Dr. Lonappan was not asked whether she told patients that Beaumont assigned her to their care. Rather, Dr. Lonappan was asked, "[j]ust [for] foundation" purposes whether she was assigned specifically to plaintiff's service by Beaumont. Thus, plaintiff's interpretation of Dr. Lonappan's testimony is incorrect and does not demonstrate that she would inform her patients by whom, or which entity, she was assigned to their care.

Moreover, Dr. Lonappan actually testified that it was her "usual practice" to tell patients she was a "seeing [a patient] for your family doctor . . . ." And, as the trial court also concluded (after properly declining to consider plaintiff's affidavit), we agree that whether Dr. Lonappan's laboratory coat indicated she was affiliated with Beaumont, Hospital Consultants, or both, and

whether Dr. Lonappan told patients she was assigned to their care by Beaumont, was immaterial because the evidence demonstrates plaintiff did not recall seeing any doctors other than a "pain doctor[]" when she was in the hospital in October 2015. Because we agree that the evidence demonstrates plaintiff did not recall seeing Dr. Lonappan, the trial court did not err in concluding that plaintiff's belief that Dr. Lonappan was an ostensible agent of Beaumont was not reasonable. Accordingly, the trial court properly granted summary disposition of plaintiff's claim of vicarious liability against Beaumont on an ostensible-agency theory.

## III. ACTUAL AGENCY

Plaintiff also argues that the trial court erred in granting summary disposition of her claim of vicarious liability against Beaumont under an actual-agency theory because, under MCR 2.116(G)(4), Beaumont's motion for summary disposition did not specifically identify that aspect of plaintiff's claim as being challenged and failed to support its motion with documentary evidence. We agree.

"Generally, an issue must be raised, addressed, and decided in the trial court to be preserved for review." *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751 n 40; 880 NW2d 280 (2015). In her response to Beaumont's motion for summary disposition, plaintiff did not argue that Beaumont's motion did not adhere to the requirements of MCR 2.116(G)(4). Therefore, the issue is unpreserved for appellate review. This Court reviews unpreserved issues for plain error affecting a party's substantial rights. *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008). " 'To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights.' " *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 443; 906 NW2d 482 (2017) (alteration in original, citation and quotation marks omitted).

When filing a motion under MCR 2.116(C)(10), the moving party must "specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). MCR 2.116(G)(4) further states:

> When a motion under subrule (C)(10) is made *and supported as provided in this rule*, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her. [Emphasis added.]

"The level of specificity required under MCR 2.116(G)(4) is that which would place the nonmoving party on notice of the need to respond to the motion made under MCR 2.116(C)(10)." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Additionally, a motion for summary disposition under MCR 2.116(C)(10) must be supported with documentary evidence. *Meyer v City of Center Line*, 242 Mich App 560, 574; 619 NW2d 182 (2000). If the motion is not properly supported, "the nonmoving party has no duty to

respond and the trial court should deny the motion." *Barnard Mfg Co, Inc*, 285 Mich App at 370; MCR 2.116(G)(4). See also *Meyer*, 242 Mich App at 575 (concluding that the trial court erred when it granted an improperly supported motion for summary disposition under MCR 2.116(C)(10)).

MCR 2.116(I) states, in relevant part, that "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs shows that there is no genuine issue of material fact, the court shall render judgment without delay." "Although a trial court may sua sponte grant summary disposition under MCR 2.116(I), the trial court may not do so in contravention of a party's due process rights." *Sandstone Creek Solar, LLC v Twp of Benton*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 352910); slip op at 14, citing *Lamkin v Hamburg Twp*, 318 Mich App 546, 550; 899 NW2d 408 (2017). "Due process requires that a party receive notice of the proceedings against it and a meaningful opportunity to be heard." *Bonner v City of Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014).

The trial court should not have granted summary disposition of plaintiff's claim of vicarious liability against Beaumont under an actual-agency theory. Beaumont claims it identified plaintiff's actual-agency theory in its motion for summary disposition by citing to this Court's decision in *Laster v Henry Ford Health Sys*, 316 Mich App 726, 739; 892 NW2d 442 (2016). But Beaumont's motion and brief in support cited *Laster* twice: once in the motion itself as part of a string of citations after asserting plaintiff failed to create a genuine issue of material fact to establish Beaumont was vicariously liable related to the allegations against Dr. Lonappan, and again for the proposition that, in Michigan, "liability will typically be imposed 'upon a defendant only for his or her own negligence, not the alleged tortious conduct of others.'" Although *Laster* may, in part, address the control test for purposes of actual agency, Beaumont's motion for summary disposition presented no argument regarding this issue, contrary to its claim on appeal.

Although Beaumont's motion for summary disposition only addressed plaintiff's argument regarding vicarious liability under an ostensible-agency theory, the trial court summarized Beaumont's motion as asserting that the "undisputed evidence establishe[d] that Dr. Lonappan was not an actual employee or agent of the hospital." The trial court noted that a hospital will not be liable for the negligence of an independent-contractor physician, unless the hospital has assumed control over the physician. The trial court found that Dr. Lonappan was employed by Hospital Consultants, not Beaumont, but noted that Beaumont assigned patients to physicians who worked for Hospital Consultants. The trial court also noted Dr. Lonappan's testimony that, once Beaumont assigned her a patient, it was her job to formulate a plan for the patient's diagnosis and treatment, and was her decision whether to discharge patients. The trial court concluded that there was no evidence suggesting "anyone other than Dr. Lonappan had the final say concerning how Plaintiff (or any other patient) would be treated." Thus, the trial court found Dr. Lonappan was not Beaumont's actual agent.

The record does not demonstrate plaintiff was on notice that the trial court was prepared to consider the dismissal of her claim of vicarious liability under an actual-agency theory. Although the record contained some evidence regarding the extent of control Dr. Lonappan had over her treatment of patients in Beaumont, notably through her deposition testimony, none of that was provided in Beaumont's motion for summary disposition. The excerpts of Dr. Lonappan's deposition testimony provided by Beaumont dealt with background information regarding the

events concerning plaintiff's care and which entity employed her. It was not until plaintiff's response that a full transcript of Dr. Lonappan's deposition testimony was provided.

And, as noted, the arguments in Beaumont's motion related to the vicarious-liability claim focused on the ostensible-agency theory. Further, during those portions of argument related to plaintiff's vicarious-liability claim at the hearing on Beaumont's motion for summary disposition, the parties and trial court focused on facts and argument related to the ostensible-agency theory. Thus, while a trial court "may sua sponte grant summary disposition under MCR 2.116(I), the trial court may not do so in contravention of a party's due process rights." *Sandstone Creek Solar, LLC*, ___ Mich App at ___; slip op at 14. Because Beaumont's motion for summary disposition did not specifically indicate it was challenging plaintiff's actual-agency theory of vicarious liability, plaintiff was not put on notice of the need to respond. *Barnard Mfg Co, Inc*, 285 Mich App at 369. Further, because Beaumont did not support its motion with a complete copy of Dr. Lonappan's transcript, but, rather, portions of the transcript not relevant to the actual-agency theory, plaintiff had no duty to respond. *Id*. at 370. Because plaintiff was not put on notice that Beaumont's motion encompassed a challenge to her actual-agency theory, and was not provided an opportunity to address that issue given the lack of notice or any indication the trial court would address the issue, the trial court improperly granted summary disposition of plaintiff's vicarious-liability claim under an actual-agency theory. *Sandstone Creek Solar, LLC*, ___ Mich App at ___; slip op at 14.

## IV. CONCLUSION

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Michael J. Riordan