# STATE OF MICHIGAN

# COURT OF APPEALS

COUNTY OF INGHAM, COUNTY OF
JACKSON, and COUNTY OF CALHOUN,

        Plaintiffs-Appellants,

v

MICHIGAN COUNTY ROAD COMMISSION
SELF-INSURANCE POOL,

        Defendant-Appellee.

FOR PUBLICATION
October 10, 2017
9:05 a.m.

No. 334077
Ingham Circuit Court
LC No. 15-000432-NZ

Before: TALBOT, C.J., and O'CONNELL and O'BRIEN, JJ.

O'CONNELL, J.

Plaintiffs, Ingham County, Jackson County, and Calhoun County (collectively, "the counties"), appeal as of right the trial court's order granting summary disposition in favor of defendant, Michigan County Road Commission Self-Insurance Pool ("Pool"), under MCR 2.116(I)(2) (opposing party, rather than moving party, entitled to judgment). Because we agree with the counties that they are successors in interest to their respective counties' former road commissions, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A Declaration of Trust created the Pool in April 1984. The Pool's bylaws limit membership to county road commissions located in the State of Michigan and require each member to sign an inter-local agreement. The appointed road commissions for Ingham County, Jackson County, and Calhoun County joined the Pool soon after its formation.

Members of the Pool made annual premium contributions to cover the payment of claims and the Pool's operating and administrative expenses. The Pool's bylaws and the inter-local agreements permitted the refund of surplus funds more than one year after payment of a member's premium contribution. The counties alleged that the Pool had a longstanding practice of refunding excess contributions to members out of unused reserves in proportion to premiums paid, typically calculated and refunded several years later.

In February 2012, the Legislature amended MCL 224.6 to permit transfer of "the powers, duties and functions that are otherwise provided by law for an appointed board of county road commissioners . . . to the county board of commissioners by resolution as allowed under section

-1-

11 of 1851 PA 156, MCL 46.11." 2012 PA 14. At the same time, the Legislature amended MCL 46.11 to give a county board of commissioners the authority to pass a resolution dissolving an appointed road commission and transferring its "powers, duties, and functions" to the county board of commissioners. 2012 PA 15. Pursuant to these amendments, the Boards of Commissioners of Ingham County, Jackson County, and Calhoun County adopted resolutions to dissolve their county road commissions and take over their roles.

Ingham County adopted the dissolution resolution on April 24, 2012, effective June 1, 2012. About two weeks before adopting the resolution, Ingham County paid its contribution to the Pool for the fiscal year beginning April 1, 2012, apparently with the understanding that the Pool intended to amend its rules to permit the county successors to the dissolved road commissions to participate in the Pool. Ingham County maintained that it only learned later in May that the Pool would not allow the county to remain a member of the Pool. On May 31, 2012, the Ingham County road commission signed two agreements, one to withdraw from the Pool and one to cancel insurance through the Pool, effective June 1, 2012.

Calhoun County signed a similar withdrawal agreement, effective November 1, 2012. It appears that Jackson County did not sign a withdrawal agreement.

At Ingham County's request, the Pool agreed to refund the unused pro-rata portion of the former road commission's annual contribution for the 2012-2013 fiscal year. The Pool declined, however, to refund surplus equity flowing from prior year contributions because of the road commission's withdrawal from membership.

The counties brought a four-count complaint. The counties alleged that they were eligible for ten years' worth of refunds because the Pool was still refunding contributions from 2002 premiums. The Pool refused to issue these refunds to the counties. Consequently, the counties maintained, the Pool's refusal reflected unconstitutional lending under Const 1963, art 9, § 18, extortion, conversion, and breach of contract. The Pool denied the counties' allegations and disputed their claims.

The counties filed a partial motion for summary disposition as to liability under MCR 2.116(C)(9) and (10). The Pool filed a cross-motion for summary disposition under MCR 2.116(I)(2). The trial court granted summary disposition under MCR 2.116(I)(2) in favor of the Pool, rejecting all of the counties' arguments.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. *Village of Dimondale v Grable*, 240 Mich App 553, 563; 618 NW2d 23 (2000). We also review de novo legal questions, *In re Jude*, 228 Mich App 667, 670; 578 NW2d 704 (1998), including issues of statutory interpretation, *Slater v Ann Arbor Public Schools Bd of Ed*, 250 Mich App 419, 426; 648 NW2d 205 (2002), and contract interpretation, *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002).

Summary disposition under MCR 2.116(C)(9) is appropriate if a defendant fails to mount a valid defense and no factual development would defeat the plaintiff's claim. *Village of Dimondale*, 240 Mich App at 564. A motion for summary disposition under MCR 2.116(C)(9)

"tests the sufficiency of the defendant's pleadings," and the "trial court must accept as true all well-pleaded allegations . . . ." *Slater*, 250 Mich App at 425. To grant summary disposition under MCR 2.116(C)(9), the trial court can only consider the pleadings, including complaints, answers, and replies, but not the motion for summary disposition itself. *Village of Dimondale*, 240 Mich App at 565; MCR 2.110(A).

Summary disposition is proper if there is no genuine issue of material fact. MCR 2.116(C)(10). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Spiek v Mich Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). This Court considers the pleadings and the evidence in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

Finally, a trial court properly grants summary disposition to the opposing party under MCR 2.116(I)(2) if it determines that the opposing party, "rather than the moving party, is entitled to judgment." *Sharper Image Corp v Dep't of Treasury*, 216 Mich App 698, 701; 550 NW2d 596 (1996).

## III. ANALYSIS

### A. SUCCESSORS IN INTEREST

MCL 224.1 permits a county to put to a vote the question of adopting a county road system. When a county has elected to adopt the county road system, the county is required to elect a board of county road commissioners, subject to four exceptions. MCL 224.6(1). The first exception permits the county board of commissioners to appoint a road commission, instead of holding an election, if the county "contains all or part of 12 surveyed townships . . . ." MCL 224.6(4). The second exception permits charter counties with a population of 750,000 or more to reorganize the powers and duties of a board of county road commissioners by amending the county charter. MCL 224.6(5). The third exception—at issue in this case—permits a county board of commissioners to dissolve an appointed board of county road commissioners and transfer its powers, duties and functions to the county board of commissioners. MCL 224.6(7). The fourth and final exception, similar to the third exception but for a county road commission that was elected, permits an election on the question of dissolution of the county road commission and transfer of its role to the county board of commissioners. MCL 224.6(8).

When the Boards of Commissioners of Ingham County, Jackson County, and Calhoun County dissolved their counties' road commissions pursuant to MCL 46.11(s) and 224.6(7), the powers, duties, and functions of the dissolved county road commissions passed to the respective counties' boards of commissioners. The parties dispute the meaning of the word "dissolved" in MCL 46.11(s) and 224.6(7). The counties argue that the county boards of commissioners absorbed the rights and interests of the road commissions. The Pool counters that the road commissions ceased to exist when the counties dissolved them, so the counties could not absorb their powers, duties, and functions. The trial court agreed with the Pool, ruling that the counties were not successors in interest to their former road commissions because the statute's reference to dissolution signified the end of the road commissions' existence.

We disagree with the trial court. Reading MCL 224.6 as a whole shows that a county that has adopted a county road system must have a board of county road commissioners. The general rule in MCL 224.6(1) and its four exceptions make clear that a county that has adopted the county road system must have a road commission that is elected, MCL 224.6(1), appointed, MCL 224.6(4), reorganized by amendment to a county charter, MCL 224.6(5), or dissolved for its role to be transferred to the county board of commissioners, MCL 224.6(7) and (8).[1] Therefore, when a county dissolves its road commission, the county board of commissioners becomes the successor in interest to the former road commission.

The Pool argues that the counties are not successors in interest to their dissolved road commissions because the statute provides for the transfer of only the "powers, duties, and functions" of the former road commissions but not their property rights or interests. The Pool contends that because the counties have only the powers expressly authorized by statute, the dissolved road commissions' property rights and interests did not transfer to the counties. We reject this stilted reading of the statute.

Counties derive their authority from the Michigan Constitution and state statutes. *Mich Muni Liability and Prop Pool v Muskegon Co Bd of Co Rd Comm'rs*, 235 Mich App 183, 190; 597 NW2d 187 (1999). Local governments have only those powers expressly conferred by the state Constitution or by statute and implicit authority to implement their express powers. *Id*. at 190-191.

Pertinent to the Pool's argument, road commissions have the authority to hold title or an interest in land and to sell or convey land that is not part of or necessary "for a public street, highway, or park." MCL 224.9(3). A typical county road commission would own a fleet of road maintenance vehicles, such as snowplows and salt trucks, in addition to a garage facility to house those vehicles along with road maintenance materials and supplies, including salt. Applying the Pool's argument, these facilities and equipment would become ownerless once a county board of commissioners dissolved its county's road commission and assumed its powers.

The counties further disagree with the Pool's narrow reading of the statute because it would constitutionally impair contracts for road construction and maintenance that involved the former road commissions. See US Const, art 1, § 10; Const 193, art 1, § 10. Rather, the counties argue, the former road commissions' contractual rights devolved upon the respective counties.

We agree. Whenever possible, courts must interpret a statute to avoid the conclusion that it is unconstitutional or raises doubts about its constitutionality. *People v Nyx*, 479 Mich 112, 124; 734 NW2d 548 (2007). Similarly, courts must read statutes as a whole. *Robinson v City of Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). A statute that substantially impairs a contractual relationship is unconstitutional unless the statutory impairment serves a "legitimate

---

[1] The counties argue that the Legislature provided for the dissolution, not the abolition, of an appointed road commission to allow an *elected* county board of commissioners to take the place of an *appointed* road commission. This argument ignores the distinct provisions for the dissolution of both types of road commissions, elected or appointed. See MCL 224.6(7) and (8).

-4-

public purpose" and was implemented in a manner "reasonably related to the public purpose." *Health Care Ass'n Workers Compensation Fund v Director of the Bureau of Worker's Compensation, Dep't of Consumer and Indus Servs*, 265 Mich App 236, 241; 694 NW2d 761 (2005). The Pool's narrow reading of "powers, duties, and functions" would result in the unconstitutional impairment of the former road commissions' contracts, rendering the statutory provisions permitting dissolution of the road commissions unconstitutional. We avoid this result by interpreting the statutory provisions more comprehensively. Thus, we conclude that the counties became the successors in interest to their former road commissions when they exercised their statutory right to dissolve the road commissions. As successors in interest, the counties took on all statutory rights and responsibilities given to road commissions.

## B. POOL MEMBERSHIP

The parties dispute whether the counties could be members of the Pool for the purpose of determining whether they are eligible for surplus refunds of prior year contributions. The Pool contends that its bylaws only permit road commissions to be members, so the counties are not qualified for membership. This Court construes bylaws using the same rules applied to contract interpretation. *Tuscany Gove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015). We begin with the plain language of the bylaws and apply it if it is clear and unambiguous. *Rossow*, 251 Mich App at 658.

The Pool's bylaws limit membership to county road commissions, but the bylaws do not define a county road commission. Instead, the bylaws refer to the statutory authority of county road commissions. Because we concluded that the counties were successors in interest to their dissolved road commissions as a matter of statutory interpretation, we likewise conclude that the successor counties are eligible for Pool membership by virtue of the statutory reference to county road commissions in the Pool's bylaws.

Next, the Pool argues that the counties are not entitled to refunds even if deemed successors in interest because they withdrew from the Pool. We examine the language of the withdrawal agreements to determine their scope. See *Rossow*, 251 Mich App at 658.

First, the record contains no evidence that the Jackson County road commission signed a withdrawal agreement, and the Pool agrees that it did not. Thus, the Jackson County road commission did not withdraw from the Pool. Likewise, Jackson County's dissolution of its road commission did not automatically result in withdrawal from the Pool. Rather, Jackson County succeeded its dissolved road commission, so Jackson County is eligible for refunds from prior year contributions that its road commission made.

Ingham County's and Calhoun County's road commissions each signed an agreement to withdraw from the Pool. These withdrawal agreements began by stating that the counties dissolved their road commissions pursuant to statute. The agreements made withdrawal from the Pool effective from the date of dissolution of the road commissions. Further, the agreements contained a provision limiting their scope to withdrawal of membership without affecting "any other terms or conditions" of the Declaration of Trust, the inter-local agreement, or the bylaws. The Pool also agreed to administer claims arising from events occurring before the date of dissolution of the road commissions. Accordingly, reading the withdrawal agreements as a

whole and in light of the limitation on their scope, the withdrawal agreements did not alter eligibility for the refund of surplus premiums from prior year contributions. Having determined that the counties are successors in interest to their former road commissions, we conclude that the counties are entitled to refunds of surplus premiums reflecting their former road commissions' prior year contributions through the date listed in each withdrawal agreement.

In conclusion, the trial court erred by granting summary disposition in favor of the Pool because the counties are successors in interest to their dissolved road commissions. As successors in interest, the counties are eligible for membership in the Pool. Additionally, Jackson County did not sign a withdrawal agreement, and the withdrawal agreements that Ingham County and Jackson County signed did not affect their entitlement to refunds. Thus, the counties are entitled to receive refunds of surplus premiums from prior year contributions made by the former road commissions.[2]

We reverse and remand. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Michael J. Talbot
/s/ Colleen A. O'Brien

---

[2] Accordingly, we do not address the counties' remaining arguments.