# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

COUNTY OF INGHAM v MICHIGAN COUNTY ROAD COMMISSION
SELF-INSURANCE POOL

Docket No. 160186. Argued on application for leave to appeal October 7, 2021. Decided December 21, 2021.

Ingham County, Jackson County, and Calhoun County (collectively, the Counties) filed an action in the Ingham Circuit Court alleging that they had a right to receive a decade's worth of surplus contributions (surplus equity) made to the Michigan County Road Commission Self-Insurance Pool (the Pool). The parties filed cross-motions for summary disposition, and the court, Rosemarie E. Aquilina, J., granted summary disposition to the Pool and rejected the Counties' claims. On appeal, the Court of Appeals, TALBOT, C.J., and O'CONNELL and O'BRIEN, JJ., reversed, holding that the Counties were successors in interest to their dissolved road commissions. 321 Mich App 574 (2017) (*Ingham Co I*). Additionally, the Court of Appeals held that because Jackson County had not signed a withdrawal agreement with the Pool, Jackson County had not withdrawn from the Pool and was entitled, as a successor in interest, to receive equity distributions from prior-year contributions made by its former road commission. The Pool sought leave to appeal in the Supreme Court, and the Supreme Court, in lieu of granting leave, remanded the case to the Court of Appeals. The Supreme Court directed the Court of Appeals to address on remand whether the Pool was permitted to decline to issue refunds of surplus premiums to the Counties of contributions from previous years even if the Counties were successors in interest to their former road commissions. 503 Mich 917 (2018). On remand, the Court of Appeals, O'BRIEN, P.J., and GLEICHER and STEPHENS, JJ., affirmed its previous decision. 329 Mich App 295 (2019) (*Ingham Co II*). After reviewing the Pool's founding document (the Declaration of Trust), the Pool's By-Laws, and the Inter-Local Agreements executed between the Pool and each of the Counties' road commissions when they joined the Pool, the Court of Appeals concluded that the Pool's withdrawal policy was clear: a withdrawing member forfeits any and all rights to dividends, credits, and/or interest that is or will become payable after the effective date of the member's withdrawal from the Pool. However, the Court of Appeals reasoned that Jackson County had not withdrawn from the Pool because the Jackson County Road Commission had never executed the Pool's withdrawal agreement. The Court of Appeals further determined that Jackson County was in the position of a "county road commission" for purposes of determining the Counties' eligibility for membership under the By-Laws, and that membership in the Pool had been transferred from Jackson County's former road commission to the county itself. Regarding Ingham and Calhoun Counties, the Court of Appeals recognized that they had withdrawn from the Pool, but the Court

determined that excluding the Counties from sharing in distributions of surplus equity was unenforceable as against public policy, citing MCL 124.5(6) of the intergovernmental contracts act, MCL 124.1 *et seq.* The Court further stated that when a road commission withdraws from the Pool because it was dissolved, excluding a county from any surplus distribution would penalize the county for exercising its right to dissolve its road commission. The Supreme Court ordered and heard oral argument on whether to grant the Pool's application for leave to appeal or take other action. 506 Mich 913 (2020).

In an opinion by Chief Justice MCCORMACK, joined by Justices ZAHRA, VIVIANO, CLEMENT, CAVANAGH, and WELCH, the Supreme Court, in lieu of granting leave to appeal, *held*:

The Counties did not have a contractual right to distributions of surplus equity under the Declaration of Trust, Inter-Local Agreements, or the Pool's By-Laws. Further, Michigan's public policy did not require the Pool to include its former members in distributions of surplus equity.

1. The Declaration of Trust permitted the Pool to distribute surplus equity to county road commissions who were members of the Pool during the fiscal year in which the funds came into the Pool's possession. Although the Counties interpreted this permissive language as obligating the Pool to make distributions, the Declaration of Trust, the Pool's By-Laws, and the Inter-Local Agreements did not mandate the terms of any such distributions. Rather, the Declaration of Trust provided that the Pool was permitted to treat members who withdrew from the Pool differently and less favorably than members who continued in the Pool. This "differently and less favorably" language was also referred to in the By-Laws and the Inter-Local Agreements, which provided that distributions of surplus equity would be the responsibility of the Pool, as stated in the Pool's founding documents. Because the road commissions of Ingham and Calhoun Counties withdrew from the Pool, their agreements with the Pool allowed the Pool to treat them differently and less favorably than continuing members, including by excluding them from any surplus-equity distributions. Although Jackson County did not execute a withdrawal agreement with the Pool, under the Pool's By-Laws, only county road commissions were permitted to be members of the Pool, and the By-Laws did not provide any mechanism for transferring membership when a member's successor lacked eligibility under the By-Laws. Therefore, the dissolution of the Jackson County Road Commission did not transfer the road commission's membership to the county itself. Although the By-Laws did not define the term "county road commissions," it does not follow that because the dissolved road commissions' powers, duties, and functions were transferred to the Counties, the Counties were therefore eligible for Pool membership. Notably, before the 2012 amendment of the County Road Law, the law provided that every county with a county road system had to have a board of county road commissioners, i.e., a county road commission. Therefore, even if the By-Laws' use of the term "county road commission" was ambiguous, the law when the By-Laws were drafted, adopted, and last revised made clear that the only reasonable interpretation of "county road commission" was a county road commission. Under a straightforward reading of the By-Laws, a county that has dissolved its road commission would not be eligible for membership in the Pool. Accordingly, despite the fact that Jackson County did not formally withdraw from the Pool, none of the Counties had a contractual right to share in any distributions made after the effective date of the dissolution of their respective road commissions. Further, whether the Counties were successors in interest to the road commissions was not relevant to determining whether they were entitled to relief. A successor in interest does

not acquire greater rights than its predecessor. The Inter-Local Agreements did not provide the dissolved road commissions (and by extension, did not provide the Counties) with the right to share in any distribution of surplus equity.

2. According to the Counties, public policy required the Pool to include them in any distributions of surplus equity. Generally, competent persons are afforded the utmost liberty of contracting, and when their agreements are voluntarily and fairly made, they shall be held valid and enforceable in the courts. However, when there are definite indications in the law of some contrary public policy, the contract provision must yield to public policy. First, contrary to the Counties' argument, excluding the Counties from distributions of surplus equity was not counter to MCL 124.5(6). The statute provides that insurance protection is essential to the proper functioning of municipal corporations and that proper risk management requires spreading risk to minimize fluctuation in insurance needs. But excluding the Counties from surplus distributions would not deny the Counties essential insurance coverage, nor would it concentrate risk in the Counties. The dissolution of the Counties' road commissions and corresponding end in Pool membership did not prevent the Counties from seeking coverage from the Pool for incidents that occurred while the dissolved road commissions were members. Rather, under the withdrawal policy, the Counties simply would not receive payments that their road commissions might have received, had they not been dissolved, if the Pool had operated at a surplus during the relevant time periods. Further, this result did not penalize the Counties for dissolving their road commissions. The Counties' dissolution of their road commissions brought about the end of the commissions' memberships in the Pool, but the result was no different than if the road commissions had withdrawn from the Pool, as allowed by the Inter-Local Agreements, without dissolving. In this way, the Counties were treated the same as any other former member. The Counties also argued that public policy required the Pool to include them in distributions of surplus equity on the basis of legislation in the context of worker's compensation insurance. MCL 500.2016(1) restricts a self-insurance group from conditioning a refund of surplus equity on a member's continued participation in the group, but this restriction only applies in the context of worker's compensation insurance. The statute identifies this practice as an unfair method of competition and as an unfair or deceptive practice in the "business of insurance." But under MCL 124.6 of the intergovernmental contracts act, the Pool was not an insurance company or insurer, and its provision and administration of group self-insurance did not constitute "doing an insurance business" under the statute. Because the Pool was neither a workers' compensation insurer nor in the insurance business, MCL 500.2016 is not a "definite indication in the law" prohibiting the Pool's exclusion of former members from surplus distributions.

Reversed and remanded.

Justice VIVIANO, concurring, agreed in full with the majority opinion but wrote separately because he questioned whether the Legislature had anticipated or desired the result reached by the Court. When the Pool was formed, the law required every county in Michigan with a county road system to have a county road commission, but the 2012 amendment of the law allowed county boards of commissioners to dissolve their county road commissions and assume their road commissions' powers, duties, and functions. However, the Legislature did not also address whether counties which had road commissions that had entered into self-insurance pools limiting membership to county road commissions would have any right to continued membership in the

pool or to receive any distributions of surplus equity from the pool to which the road commissions would have otherwise been entitled. It was concerning that by exercising their statutory right to dissolve their road commissions, the Counties lost entitlement to funds they had contributed to the Pool but which were not used (i.e., the surplus equity). Because these overpayments were ultimately made by the taxpayers of the Counties, Justice VIVIANO questioned whether the Legislature intended for such punitive actions to be taken against counties who had exercised their statutory right to dissolve their road commissions.

Justice BERNSTEIN, dissenting, would have affirmed the Court of Appeals because he believed it had reached the right result for the right reasons.

# OPINION

Chief Justice:
    Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED December 21, 2021

S T A T E   O F   M I C H I G A N

SUPREME COURT

COUNTY OF INGHAM, COUNTY OF
JACKSON, and COUNTY OF CALHOUN,

Plaintiffs-Appellees,

v                                                                      No. 160186

MICHIGAN COUNTY ROAD
COMMISSION SELF-INSURANCE POOL,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

McCORMACK, C.J.

The counties of Ingham, Jackson, and Calhoun (the Counties), the plaintiffs, dissolved their county road commissions. Those commissions had been members of the Michigan County Road Commission Self-Insurance Pool (the Pool), the defendant. The Counties sued the Pool, asserting that they have a right to receive a decade's worth of surplus equity (i.e., whatever money remains in a fiscal year after the payment of claims

and operating expenses). The Counties believe they are the successors in interest to their dissolved road commissions and, as such, are entitled to the surplus equity that the commissions might have received had they not been dissolved and withdrawn from the Pool. Jackson County makes one other argument: because its road commission never formally withdrew from the Pool, the county says it has a right to receive surplus equity on the same terms as any current member.

The Pool disagrees. It says that the Counties have no right to receive surplus equity because the documents governing the Pool's operations and its contracts with its various members provide the Pool with discretion in distributing surplus equity. This includes the power to exclude former members should a distribution be made.

The Court of Appeals sided with the Counties. The panel held that the Counties are the successors in interest to their dissolved road commissions and, as a matter of public policy, the Counties have a right to receive surplus equity for fiscal years in which their road commissions were members of the Pool. The Court of Appeals also determined that the dissolution of the Jackson County Road Commission did not disqualify Jackson County from membership in the Pool, and therefore, the county may receive surplus equity regardless of any public-policy considerations.

We reverse. We agree with the Pool that the Counties do not have a contractual right to receive surplus equity and that such an arrangement is not contrary to public policy. And for Jackson County, we hold that the dissolution of its county road commission did *not* transfer membership in the Pool from the road commission to the county itself, so the Pool may therefore exclude Jackson County from postdissolution distributions.

2

We reverse the judgment of the Court of Appeals and remand to that Court for consideration of the Counties' remaining arguments.

## I. FACTS AND PROCEDURAL HISTORY

In 1982, the Legislature amended the intergovernmental contracts between municipal corporations act, MCL 124.1 *et seq.*, to permit "any 2 or more municipal corporations,[1] by intergovernmental contract, [to] form a group self-insurance pool to provide for joint or cooperative action relative to their financial and administrative resources for the purpose of providing to the participating municipal corporations risk management and coverage for pool members and employees of pool members[.]" MCL 124.5(1), as added by 1982 PA 138.

Soon after, in April 1984, several county road commissions created the Pool. Formed as a trust, the Pool's founding document (the Declaration of Trust) explains that the purpose of the Pool is "to provide for joint and cooperative action relative to Members' financial and administrative resources for the purpose of providing to participating Members risk management and [insurance] coverage for pool Members . . . ."

To do that, the Declaration of Trust provides that a member of the Pool "shall promptly pay all premiums and assessments as required by the Board of Directors" and limits how the Pool can spend these funds. For any given fiscal year, the Pool must set aside a "reasonable sum" for operational and administrative expenses. Any remaining funds "shall be used only" for certain expenditures, including the payment of claims and

---

[1] As used in the intergovernmental contracts act, the term "municipal corporation" includes "a county, charter county, [or] county road commission." MCL 124.1(a).

3

judgments.  Among these permitted uses is the following language, found at Article VI, Section 9 of the Declaration of Trust:

> Distribution among the members during that fiscal year [in which the premiums were collected by the Pool] in such manner as the Members and the Board of Directors shall deem to be equitable, of any excess monies remaining after payment of claims and claims expenses and after provision has been made for open claims and outstanding reserves and a reserve for claims incurred but not reported; provided, however, that no such distributions shall be made earlier than twelve (12) months after the end of each Trust Year; and provided further, that undistributed funds from previous Trust Years may be distributed at any time if not required for loss funding and if approved for distribution by the Board of Directors. **The Board of Directors may treat members who withdraw from future Trust Years differently and less favorably than they treat members who continue in the Trust for future years.** [Emphasis added.]

The Declaration of Trust further provides, at Section 6 of Article X, that

> [t]here will be no disbursement out of this Trust for any fiscal year by way of dividends or distribution of accumulated reserve to Members until (a) after provision has been made for all known obligations and (b) the Board of Directors shall deem the distribution to be proper.

The Counties' road commissions joined the Pool in 1984 or 1985.  At that time, each of their road commissions executed an "Inter-Local Agreement" with the Pool.  These agreements provided that "[t]he responsibility of the Pool with regard to . . . disposing of surpluses . . . shall be as set forth in the Trust creating the Pool, the Pool By-Laws, rules, regulations, coverage agreements and Inter-Local Agreements entered into between the Pool and participating county road commissions."  The agreements also contained language like that found in the Declaration of Trust at Section 9 of Article VI, describing how the Pool can use its funds.

4

In February 2012, about 30 years after the Pool was established, the Legislature amended the County Road Law, MCL 224.1 *et seq.*, and the county boards of commissioners act, MCL 46.1 *et seq.* See 2012 PA 14 and 2012 PA 15. These amendments allowed county boards of commissioners to dissolve their road commissions and thereby "transfer[]" the "powers, duties, and functions" of the dissolved road commission to the county's board of commissioners. MCL 224.6(7), as amended by 2012 PA 14. The changes marked a break from the requirement, first established in 1909, that almost every county in Michigan having a county road system (including these plaintiffs) must also have a "board of county road commissioners" (that is, a county road commission). See MCL 224.6, as enacted by 1909 PA 283.

Following these amendments, the boards of commissioners of each of the Counties adopted resolutions that dissolved their appointed county road commissions.

The board of commissioners for Ingham County adopted its resolution in April 2012 dissolving the Ingham County Road Commission effective June 1, 2012. On May 31, 2012, one day before the resolution's effective date, the Pool and the Ingham County Road Commission entered into an "Agreement In Recognition Of Termination From Michigan County Road Commission Self-Insurance Pool." This withdrawal agreement provided that "[b]y operation of the action taken by the Ingham County Board of Commissioners," i.e., the dissolution resolution, "the Commission's membership in [the Pool] shall be and is hereby terminated concurrent with the termination of the Ingham County Road Commission as of 12:01 a.m. on June 1, 2012 . . . ." The agreement also provided that the Pool would keep servicing any claims (pending or future) that "occur or arise from incidents or events occurring prior in time to June 1, 2012." The agreement provided for

5

a "contribution adjustment" of the road commission's annual contribution for the current (2012-2013) fiscal year, but it did *not* provide for any refund of any surplus equity flowing from prior-year contributions.

The board of commissioners for Calhoun County adopted its own dissolution resolution in September 2012. About a week before the resolution's effective date of November 1, 2012, the Pool and the Calhoun County Road Commission entered into a withdrawal agreement similar to that entered into by the Ingham County Road Commission and the Pool.

The board of commissioners for Jackson County adopted its dissolution resolution in early January 2013, with an effective date of January 16, 2013. The Counties allege that before the resolution became effective, the Pool provided Jackson County with a proposed withdrawal agreement. This document stated that, as of January 16, 2013, the Jackson County Road Commission "is dissolved and by operation of law cannot and is not eligible to be a Member of the [Pool] as provided in the applicable By-Laws and the Inter-Local Agreement that govern membership in the [Pool]." The parties agree that the Jackson County Road Commission did *not* execute this proposed withdrawal agreement, and the parties have not identified any other agreement reached between the Pool and Jackson County concerning the dissolution of the Jackson County Road Commission and the county's status as a member of the Pool.

The Counties sued in 2015. The complaint stated four claims: (1) that the Pool's refusal to refund the dissolved road commissions' "*aliquod* [sic] shares" amounted to unconstitutional lending in violation of Const 1963, art 9, § 18; (2) extortion; (3) conversion or embezzlement in violation of MCL 600.2919a; and (4) breach of

6

contract. The complaint alleged that the Pool "had a longstanding pattern and practice of refunding unused premiums to Members, based on unused reserves remaining at the actuarial closing of a fiscal year, usually many years later." The complaint then alleged that the Pool had refused the Counties' demand that it pay to the respective county boards of commissioners "their *aliquod* [sic] share of any surplus then held by or improperly distributed to the remaining Members of the [Pool] for actuarial years going back to 2002 and recognized by [the Pool] as being funds in excess of reserve requirements" that the Pool must maintain under the intergovernmental contracts act, see MCL 124.7a.

The circuit court granted summary disposition in favor of the Pool. The court found that the Pool hadn't engaged in unconstitutional lending because "neither Plaintiffs nor [their] former road commission[s] loaned their credit to Defendant[; rather,] . . . Plaintiffs['] former road commissions made contributions to Defendant to obtain insurance coverage—which constituted a fair exchange of value for value[.]" The Counties' claims of extortion were summarily dismissed for lack of factual support. There was no conversion or embezzlement because the money at issue was the property of the Pool. And, finally, the court determined that the Counties did not have a contractual right to receive surplus equity because such distributions are in the Pool's discretion and former members may be excluded from any such distributions.

The Court of Appeals reversed the circuit court in *Ingham Co v Mich Co Rd Comm Self-Ins Pool*, 321 Mich App 574; 909 NW2d 533 (2017) (*Ingham Co I*). The panel departed from the circuit court's claim-by-claim analysis and instead framed the case as implicating two questions: whether the Counties are the "successors in interest" of their dissolved road commissions, and whether the Counties could be members of the Pool so

7

as to be eligible to receive distributions of surplus equity. See *Ingham Co I*, 321 Mich App at 580-585. The panel answered "yes" to both questions; it reasoned that when MCL 224.6 is read "as a whole," it compels the conclusion that "when a county dissolves its road commission, the county board of commissioners becomes the successor in interest to the former road commission." *Id*. at 581-582. The Court of Appeals acknowledged that the Pool's By-Laws limit membership in the Pool to "county road commissions." *Id*. at 584. Although this membership criteria would seem to exclude the Counties, the panel noted that the By-Laws do *not* define "county road commission" but *do* refer to "the statutory authority of county road commissions." *Id*.

The panel continued: "[b]ecause we conclude that the counties were successors in interest to their dissolved road commissions as a matter of statutory interpretation, we likewise conclude that the successor counties are eligible for Pool membership by virtue of the statutory reference to county road commissions in the Pool's bylaws." *Id*. The panel then concluded, with no reference to the Declaration of Trust, By-Laws, or Inter-Local Agreements and without identifying any specific cause of action pleaded by the Counties, that the Counties are "entitled to receive refunds of surplus premiums from prior-year contributions made by the former road commissions." *Id*. at 586.

In response to the Pool's application for leave in this Court, we remanded the case to the Court of Appeals to consider arguments that the Pool had raised in that Court but were never addressed. We directed the Court of Appeals to consider

> [w]hether, even if the plaintiff counties are successors in interest to their road commissions, the [Pool] nevertheless may, in accordance with its governing documents, decline to issue to the counties refunds of surplus premiums from prior-year contributions. [*Ingham Co v Mich Co Rd Comm Self-Ins Pool*, 503 Mich 917 (2018).]

8

On remand, the Court of Appeals again held that the Counties are entitled to refunds of surplus premiums from prior-year contributions. *Ingham Co v Mich Co Rd Comm Self-Ins Pool (On Remand)*, 329 Mich App 295; 942 NW2d 85 (2019) (*Ingham Co II*). The panel reviewed the Declaration of Trust, the Pool's By-Laws, the Inter-Local Agreements, and a memorandum outlining the Pool's policy for returning surplus equity to its members. This memorandum, dated July 19, 1990, provides, in relevant part, "A withdrawing member forfeits any and all rights to dividend, credits and/or accumulated interest that is to be paid or shall become payable after the effective date of the Member's withdrawal from the Pool."

The panel recognized that these documents did not favor the Counties' position in this litigation: "the [Pool's] withdrawal policy is clear—'[a] withdrawing member forfeits any and all rights to dividend, credits, and/or accumulated interest that is to be paid or shall become payable after the effective date of the Member's withdrawal from the Pool.' " *Ingham Co II*, 329 Mich App at 317 (emphasis omitted). Yet the Court of Appeals gave two reasons for affirming its previous decision.

For Jackson County, the Court of Appeals reasoned that the county was not a "withdrawing" member because the Jackson County Road Commission never executed the Pool's proposed withdrawal agreement. *Id*. at 316. The Court of Appeals also indicated that because Jackson County was (per the Court's opinion in *Ingham Co I*) in the position of a "county road commission" for purposes of determining the Counties' eligibility for membership under the By-Laws, membership in the Pool had been transferred from Jackson County's dissolved road commission to the county itself. *Id*. at 316-317.

9

As for Ingham and Calhoun Counties, the panel explained that these counties had withdrawn from the Pool (as evidenced by the withdrawal agreements). *Id*. at 317. But it determined that excluding the Counties from sharing in distributions of surplus equity is "unenforceable as against public policy." *Id*. at 321.

In support of this public-policy holding, the Court of Appeals cited MCL 124.5(6), which contains the Legislature's findings and statement of purpose about the 1982 amendment of the intergovernmental contracts act. In the statute, the Legislature declared that "insurance protection is essential to the proper functioning of municipal corporations" and that municipal self-insurance pools, like the defendant, further a governmental interest because they provide an alternative to standard carriers. MCL 124.5(6), as added by 1982 PA 138. Addressing this language, the Court of Appeals stated that permitting the Pool to exclude the Counties from any distribution would "directly undermine the public purposes that the Pool is required to serve under MCL 124.5(6)" because it would allow the Pool's remaining members to retain the portion of any surplus that might otherwise be paid to the Counties. *Id*. at 319-320. This result, the panel concluded, would "undercut[] the basic principles of predictability and stability that the Legislature intended such self-insurance pools to promote." *Id*. at 320. The Court of Appeals also reasoned that, in the context of a member road commission leaving the Pool because of the commission's dissolution, excluding the Counties from any surplus distribution would "penalize the counties for exercising their rights to dissolve their road commissions." *Id*. at 319.

As for remedy, the panel concluded that the Pool's "withdrawal policy" (of excluding former members from distributions) could be "severed" because it was not central to the parties' agreement and because applying a more drastic remedy, such as

declaring the parties' contractual relationship void *ab initio*, "would do *greater* damage to the policies set forth in MCL 124.5(6), effectively upending the entire Pool." *Id*. at 321-323.

We ordered oral argument on the Pool's application for leave to appeal and instructed the parties to address three issues:

> (1) whether the Court of Appeals properly held that the plaintiff Counties are successors in interest to their respective road commissions, which were dissolved pursuant to MCL 46.1 *et seq*., and MCL 224.1 *et seq*.; (2) whether the Court of Appeals properly held that plaintiff Jackson County was a member of defendant Michigan County Road Commission Self-Insurance Pool (Pool) despite having dissolved its road commission; and (3) whether the Court of Appeals properly held that the plaintiff Counties are entitled to refunds of surplus premiums paid to the Pool because the forfeiture provisions in the defendant Pool's governing documents, which comprise the parties' binding contractual agreement, are unenforceable as against public policy and must be severed, and whether this issue was properly preserved by the plaintiff Counties. [*Ingham Co v Mich Co Rd Comm Self-Ins Pool*, 506 Mich 913 (2020).]

## II.  STANDARD OF REVIEW

A trial court's decision to grant or deny summary disposition is subject to de novo review, as are "questions involving the proper interpretation of a contract or the legal effect of a contractual clause." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).  Similarly, a lower court's determination of the public policy of this state is a question of law that we review de novo.  See *Bronner v Detroit*, 507 Mich ___, ___; ___ NW2d ___ (2021) (Docket No. 160242); slip op at 4 ("Whether a contract is invalid on [public policy] grounds is a question of law subject to de novo review.").  When we review a question de novo, we review the issue independently, without deference to the lower court. *Millar v Constr Code Auth*, 501 Mich 233, 237; 912 NW2d 521 (2018).

11

### III. ANALYSIS

### A. THE COUNTIES DO NOT HAVE A CONTRACTUAL RIGHT TO RECEIVE SURPLUS EQUITY

The parties' agreements answer the question of whether the Counties have a right to share in any distribution of surplus equity after their respective withdrawals from the Pool (or in Jackson County, after the dissolution of its road commission).

"Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement. When interpreting a contract, our primary obligation is to give effect to the parties' intention at the time they entered into the contract. To do so, we examine the language of the contract according to its plain and ordinary meaning." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016) (cleaned up).

Here, the Inter-Local Agreements are the written contracts between the Pool and its members. But as the Court of Appeals explained in *Ingham Co II*, those agreements refer to and incorporate the Declaration of Trust and the By-Laws. See *Ingham Co II*, 329 Mich App at 313-314. Thus, we look at all of these documents to determine the parties' rights and obligations. *Id*.; see also *Whittlesey v Herbrand Co*, 217 Mich 625, 627; 187 NW 279 (1922) ("Where one writing refers to another, the intention of the parties is to be gathered from the two instruments taken together.") (quotation marks and citation omitted). As explained below, these documents support the Pool's position that former members do not have a right to share in any distribution of surplus equity.

Section 9 of Article VI of the Declaration of Trust permits the Pool to distribute "excess monies" to those county road commissions who were members of the Pool during

12

the fiscal year in which the funds came into the Pool's possession. The Counties interpret this permissive language as obligating the Pool to make distributions, given that Section 9 of Article VI is an exhaustive list of the ways the Pool can use funds received in a given fiscal year and there will be years in which returning excess funds is the only expenditure the Pool is allowed to make. But even if this permissive use-of-funds language can be interpreted as imposing an affirmative obligation, the Declaration of Trust, the By-Laws, and the Inter-Local Agreements do not mandate the terms of any such distribution. Rather, the Declaration of Trust states that the Pool "may treat members who withdraw from future Trust Years differently and less favorably than they treat members who continue in the Trust for future years."

This "differently and less favorably" language is also found in the Inter-Local Agreements. Those agreements state that "[t]he responsibility of the Pool with regard to . . . disposing of surpluses . . . shall be as set forth in the Trust creating the Pool, the Pool By-Laws, rules, regulations, coverage agreements and Inter-Local Agreements entered into between the Pool and participating county road commissions." There's more, too: the 1990 policy memorandum about the manner of distributions states that a member who withdraws from the Pool "forfeits" any right to receive future distributions.

Here, the county road commissions for Ingham and Calhoun Counties withdrew from the Pool before the effective date of the resolutions dissolving those commissions. As withdrawing members, those road commissions' agreements with the Pool allowed the Pool to treat them "differently and less favorably than [the Pool] treat[s] members who continue in the Trust for future years." Such unfavorable treatment might include exclusion from surplus-equity distributions altogether. The Counties have not identified

13

any contractual language limiting the Pool's discretion or otherwise barring the Pool from treating a withdrawing member less favorably (i.e., by declining to refund surplus-equity distributions to that withdrawing member).

The analysis is different for Jackson County, which did *not* execute a withdrawal agreement with the Pool. In *Ingham Co I*, 321 Mich App at 585, the Court of Appeals held that Jackson County, as the successor in interest to its dissolved county road commission, may share in distributions because "Jackson County's dissolution of its road commission did not automatically result in withdrawal from the Pool." In essence, the Court of Appeals determined that upon dissolution of the Jackson County Road Commission, the road commission's membership in the Pool passed without interruption from the commission to the county itself. Thus, Jackson County remained (and apparently still remains, under the Court of Appeals' logic) a member of the Pool and could not be subject to any different and less favorable treatment. *Id*. at 584-586.

To reach that result, the Court of Appeals observed that while the By-Laws limit membership in the Pool to "county road commissions," the By-Laws do *not* define this term. *Id*. at 584. The only interpretive clue identified by the panel was the By-Laws' reference to the "statutory authority of county road commissions." *Id*. Because the former road commissions' "powers, duties, and functions" were transferred to the Counties upon their respective dissolutions, the Court of Appeals reasoned that the reference in the By-Laws to the road commissions' statutory authority compelled the conclusion that "the successor counties are eligible for Pool membership." *Id*. at 583-584.

We disagree. The By-Laws state in relevant part: "The Pool shall be comprised of county road commissions of the State of Michigan which are authorized and approved

14

under Section 1 of Act 138, PA 1982, as amended . . . , to enter into an agreement to pool their loss exposures and which have executed the Pool Trust Agreement." This statutory authority cited by the By-Laws, Public Act 138 of 1982, is the public act that allowed "municipal corporations" to form group self-insurance pools. See MCL 124.5(1), as added by 1982 PA 138. This reference does not support the Court of Appeals' interpretation of the By-Laws as permitting membership by a county that has dissolved its county road commission. Rather, the language merely reinforces that county road commissions have been granted, by statute, the power to enter into contracts for group self-insurance. That the By-Laws broadly refer to this authority when describing the Pool's membership does not suggest that any "municipal corporation" is eligible for membership. And though the term "county road commission" is not defined in the By-Laws, its meaning is sufficiently clear—it refers to a "board of county road commissioners" as described in MCL 224.6.

This meaning is especially plain given the history of the County Road Law. Recall that before the enactment of 2012 PA 14, the County Road Law provided (with limited exceptions not applicable here) that every county with a county road system must also have a "board of county road commissioners" (i.e., a county road commission), an entity apart from the county's board of commissioners. See MCL 224.6, as enacted by 1909 PA 283. Thus, even if the By-Laws' use of the term "county road commission" can be characterized as unclear today, when the By-Laws were drafted, adopted, and last revised, the only reasonable interpretation of "county road commission" was a county road commission. See *Innovation Ventures*, 499 Mich at 507 ("When interpreting a contract, our primary obligation is to give effect to the parties' intention *at the time they entered into the contract*.") (emphasis added; quotation marks and citation omitted).

15

A review of the Counties' allegations solidifies our understanding of the By-Laws. The Declaration of Trust permits amendment of the By-Laws by two-thirds votes of both the Pool's board of directors and its members. The Counties' complaint alleges that at the Pool's annual meeting in July 2012, its members considered a board-approved resolution that would have amended the By-Laws to allow "counties that have assumed the powers and duties provided by law to county road commissions" to become members of the Pool. According to the complaint, this resolution was offered at a time when the Pool's membership was considering the effects of then-recent changes to the County Road Law and the county board of commissioners act (i.e., the changes that allowed counties to dissolve their county road commissions). Had the Pool and its members understood the By-Laws' reference to a "county road commission" as including a county that had dissolved its road commission, no such change would be necessary. The resolution was rejected by vote of the members, leaving intact the requirement that a member of the Pool be a "county road commission." The board of commissioners for Jackson County resolved to dissolve the Jackson County Road Commission about six months later.

In short, the Court of Appeals' determination that the By-Laws allow for membership in the Pool by a county that has dissolved its county road commission contradicts the plain language of the By-Laws as that language would have been understood when the By-Laws were adopted and last revised. And the Counties acknowledge that, as late as July 2012, the Pool's membership considered and rejected a proposed amendment that would have specifically allowed for membership in the Pool by counties that have dissolved their county road commissions. We agree with the Pool that,

16

under a straightforward reading of the By-Laws, Jackson County is not eligible for membership because it is not a "county road commission."

The lack of a formal withdrawal by the Jackson County Road Commission is immaterial. The Declaration of Trust, the By-Laws, and the Inter-Local Agreements do not provide any mechanism for transfer of membership when a member's successor lacks eligibility under the By-Laws. Nor do these documents contemplate the "dissolution" of a member. Rather, the Declaration of Trust, the By-Laws, and the Inter-Local Agreements provide only two ways in which a member road commission might leave the Pool: withdrawal by the member, or termination by "two-thirds vote of the Members present at an annual or special meeting of the Members." These documents do *not* provide the former member with a contractual right to receive future distributions in either situation (withdrawal or termination). Therefore, absent a change in the By-Laws that would allow membership in the Pool by a county that has dissolved its road commission, we see no reason for a different result where a member road commission has been dissolved.

We therefore conclude that the dissolution of the Jackson County Road Commission did not transfer the road commission's membership to the county itself. Accordingly, Jackson County, like Ingham and Calhoun Counties, does not have a contractual right to share in any distributions made after the effective date of the dissolution of its road commission.

Whether the Counties are "successors in interest" is not relevant to our decision that the Counties are not entitled to relief. A successor in interest acquires no greater rights than its predecessor. Upon their dissolution, the "powers, duties, and functions" of the Counties' road commissions were transferred to the Counties themselves. Had those

17

dissolved commissions had a right to receive future distributions of surplus equity, the Counties might be well-positioned to assert such a right. Likewise, the Counties may be able to seek insurance coverage from the Pool for claims arising from incidents that occurred when their now-dissolved road commissions were members. For today, however, we simply conclude that, even if the Pool experiences a surplus for any fiscal year between 2002 and 2012 and makes distributions accordingly, the Inter-Local Agreements did not provide the dissolved county road commissions (and by extension, do not provide the Counties) with the right to share in any such distribution. The circuit court correctly rejected the Counties' argument to the contrary.

## B. THE POOL'S WITHDRAWAL POLICY IS PERMISSIBLE

Finally, we hold that the public policy of this state does not require the Pool to include its former members when distributing surplus equity.

In general, "competent persons shall have the utmost liberty of contracting," and "their agreements voluntarily and fairly made shall be held valid and enforced in the courts." *Bronner*, 507 Mich at ___; slip op at 4 (cleaned up). But "where there are definite indications in the law of some contrary public policy, the contract provision must yield to public policy." *Id*. at ___; slip op at 5 (cleaned up). Such "definite indications" may be found in "our state and federal constitutions, our statutes, and the common law." *Terrien v Zwit*, 467 Mich 56, 66-68; 648 NW2d 602 (2002).

The Counties advance three reasons why public policy requires the Pool to include them in any distributions of surplus equity. First, the Counties argue that their exclusion contradicts the findings-and-purpose language found in MCL 124.5(6). Second, the

18

Counties assert that 2012 PA 14 and 2012 PA 15 provide counties with the right to dissolve their county road commissions, see MCL 46.11(s) and MCL 224.6, and exclusion amounts to penalizing the Counties for exercising this right. Third, the Counties observe that the Legislature has, in the context of worker's compensation insurance, specifically prohibited an insurer (including a self-insurance group) from conditioning the receipt of any dividend (e.g., surplus equity) on the insured "renew[ing] or maintain[ing] worker's compensation insurance with the insurer beyond the current policy's expiration date or requiring a member [of a self-insurance group] to continue participation with . . . [the] group." MCL 500.2016(1)(a). In making this claim, the Counties generally endorse the Court of Appeals' reasoning. See *Ingham Co II*, 329 Mich App at 317-321.

We disagree. The Legislature has made clear that "insurance protection is essential to the proper functioning of municipal corporations," and "proper risk management requires spreading risk to minimize fluctuation in insurance needs." MCL 124.5(6). But excluding the Counties from surplus distributions does not deny the Counties the "essential" insurance coverage that the Pool provides to its members, nor does it concentrate the risk in the Counties themselves. As explained, we do not suggest that the dissolution of their county road commissions and the corresponding end in membership in the Pool prevents the Counties from seeking coverage from the Pool for incidents that occurred while the dissolved commissions were members. The Pool's withdrawal policy simply means the Counties will not receive payments that the dissolved commissions *might* have received (had their membership in the Pool not ended) *if* the Pool operates at a surplus—an outcome that was never guaranteed.

19

While the Counties may have believed that the Pool would amend its By-Laws or change its withdrawal policy to the Counties' benefit, those changes never happened. Unlike the Court of Appeals, we see no reason why the Counties' expectation of a different result should be a relevant consideration in assessing whether the withdrawal policy is contrary to public policy. See *Ingham Co II*, 329 Mich App at 320 (describing the "withdrawal policy" as "affording the remaining members of the Pool a comparatively small windfall . . . while imposing a large, *unexpected* forfeiture on the three withdrawing counties") (emphasis added). The doctrine of promissory estoppel already provides a remedy for parties who reasonably rely on a "clear and definite" promise. See, e.g., *State Bank of Standish v Curry*, 442 Mich 76; 500 NW2d 104 (1993). The Counties have not alleged promissory estoppel, and we see no reason why an otherwise valid arrangement between the parties is contrary to public policy because the Counties hoped that the arrangement would change.

We disagree with the Court of Appeals' characterization of the withdrawal policy as a "penalty." See *Ingham Co II*, 329 Mich App at 319 ("To permit the Pool to enforce the withdrawal policy against the counties would be to permit the Pool to penalize the counties for exercising their rights to dissolve their road commissions under MCL 46.11(s) and MCL 224.6(7)."). The dissolution of the Counties' road commissions may have brought about the end of the road commissions' memberships, but the result here is no different than had those road commissions withdrawn from the Pool (as the Inter-Local Agreements allowed) and endured. That is, the Counties are being treated the same as any other former member. And describing that result as a "penalty" overlooks the reciprocal obligations that come with membership in the Pool. There is no guarantee that a surplus

will occur. Should a deficiency arise instead, the documents forming the Pool's contract with its member-commissions permit the Pool to assess those members. That is, members may be required to contribute additional funds to cover the shortfall.

Nor are we persuaded that MCL 500.2016 helps the Counties. While the statute does restrict a self-insurance group from conditioning a refund of surplus equity on a member's continued participation in the group, this restriction only applies in the context of worker's compensation insurance. See MCL 500.2016(1) ("[T]he following practices *as applied to worker's compensation insurance including worker's compensation coverage provided through a self-insurer's group* are defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance . . . .") (emphasis added). The Court of Appeals found it "telling" that the Legislature has classified this as an "unfair and deceptive" business practice when done by an insurer. *Ingham Co II*, 329 Mich App at 320, discussing MCL 500.2016; see also MCL 500.2003(1) ("A person shall not engage in a trade practice that is defined or described in this chapter or is determined under this chapter to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."). But the intergovernmental contracts act provides that the Pool "is not an insurance company or insurer under the laws of this state," and its "development, administration, and provision of group self-insurance . . . does not constitute doing an insurance business." MCL 124.6. Because the Pool is not a workers' compensation insurer, nor even in the insurance business, we decline to read MCL 500.2016 as a "definite indication in the law" prohibiting the withdrawal policy. *Terrien*, 467 Mich at 66-68.

21

## IV. CONCLUSION

The Counties' position is that they should have the benefit of continuing membership in the Pool (to share in distributions if a surplus occurs) but none of the risks (another contribution or assessment for a deficiency). The Counties do not, however, have any such right as a matter of contract. Nor have the Counties identified any "definite indications in the law" that would compel such a result as a matter of public policy. *Terrien*, 467 Mich at 66-68. We conclude, therefore, that the Pool's limitation of membership to "county road commissions" and its chosen method of distributing surplus equity reflect the documents forming the parties' agreement and are not contrary to the public policy of this state.

In their claim of appeal from the circuit court's order, the Counties argued that the circuit court erred by dismissing the Counties' claims of unconstitutional lending, extortion, and conversion. The Court of Appeals did not address these arguments in *Ingham Co I*. We reverse the Court of Appeals' judgment that the Pool's withdrawal policy is contrary to public policy and that Jackson County became a member of the Pool upon the dissolution of its county road commission, and we remand to that Court for consideration of those arguments raised by the Counties but not addressed in *Ingham Co I*. We do not retain jurisdiction.

Bridget M. McCormack
Brian K. Zahra
David F. Viviano
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

22

STATE OF MICHIGAN

SUPREME COURT

COUNTY OF INGHAM, COUNTY OF
JACKSON, and COUNTY OF CALHOUN,

      Plaintiffs-Appellees,

v                                  No. 160186

MICHIGAN COUNTY ROAD
COMMISSION SELF-INSURANCE POOL,

      Defendant-Appellant.

_____

VIVIANO, J. (*concurring*).

I concur in full with the majority but write separately because I question whether the result reached today was one the Legislature anticipated or desired. Defendant, the Michigan County Road Commission Self-Insurance Pool, is, as its name suggests, a self-insurance pool that was formed by agreement of its member county road commissions. Those road commissions are local governmental entities that could enter into such an arrangement by virtue of MCL 124.5(a), which expressly authorizes these pools. As the majority explains, at the time the Pool was created and its terms agreed upon, "every county in Michigan [with] a county road system" was required to have a " 'board of county road commissioners' (that is, a county road commission)." *Ante* at 5. Thus, the terms of the Pool naturally provided for a membership comprised of county road commissions.

In 2012, the Legislature for the first time allowed county boards of commissioners to dissolve their county road commissions and assume the road commissions' "powers, duties, and functions." See 2012 PA 14 and 2012 PA 15. But the Legislature did not

address whether those counties, like plaintiffs here—which had road commissions that had entered into self-insurance pools limiting membership to county road commissions—would have any right to continue membership in the pool or to receive any distributions of surplus equity from the pool to which the road commissions would have otherwise been entitled. Because plaintiffs no longer have separate road commissions and, in two cases, have withdrawn from the Pool, I agree with the majority that plaintiffs here no longer qualify under the Pool agreement for membership or distributions of surplus equity. Perhaps most concerning, by exercising their statutory right to dissolve their road commissions, these counties thus lost entitlement to funds they contributed to the Pool but which were not used, i.e., the surplus equity.

This may seem like a technical matter involving complex insurance arrangements between municipal corporations. But the funds plaintiffs have lost out on represent overpayments made, ultimately, by the taxpayers of those counties. They are the real losers today. It is not clear to me that the Legislature in 2012 would have wanted to allow such punitive actions to be taken against counties for exercising their statutory right to dissolve their road commissions. As a court, we cannot fill this possible gap in the 2012 legislation, and therefore, I agree with the majority's analysis and the result it reaches. See *People v Pinkney*, 501 Mich 259, 286; 912 NW2d 535 (2018). The Legislature, however, may wish to reexamine this issue in light of the Court's opinion today.

David F. Viviano

2

S T A T E   O F   M I C H I G A N

SUPREME COURT

COUNTY OF INGHAM, COUNTY OF
JACKSON, and COUNTY OF CALHOUN,

      Plaintiffs-Appellees,

v                                  No. 160186

MICHIGAN COUNTY ROAD
COMMISSION SELF-INSURANCE POOL,

      Defendant-Appellant.

---

BERNSTEIN, J. (*dissenting*).

      I would affirm for the reasons stated in the Court of Appeals opinion, as I believe the Court of Appeals reached the right result for the right reasons.

                                         Richard H. Bernstein